Norman **HILL**, Libelant,

v.

**GEORGE ENGINE COMPANY, Inc.,**
Respondent.

No. 3510.

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 19, 1961.

Phelps, Dunbar, Marks, Claverie & Sims, J. Barbee Winston, New Orleans, La., for libelant.

Adams & Reese, W. Ford Reese, Henry B. Alsobrook, New Orleans, La., for respondent.

J. SKELLY WRIGHT, District Judge.

Norman Hill, former owner of the M. V. Waw Hoss, brings this action against George Engine Company, Inc. for indemnification for the principal sum of $12,949.94, paid by Hill to the Corps of Engineers, United States Army, in satisfaction of a claim made by the Corps of Engineers against Hill for damage to a miter leaf gate of the Harvey Canal locks at Harvey, Louisiana, as a result of the striking of the gate by a barge in tow of the tug Waw Hoss on June 11, 1953. The basis for the cause of action is that the collision resulted from the alleged failure of George Engine Company, Inc. properly to perform an agreement with Hill pertaining to the installation of a propulsion engine in the Waw Hoss. The Corps of Engineers made claim against Hill only. Hill, maintaining that George Engine Company, Inc. is the party actually responsible for the damage, with the knowledge and agreement of George Engine Company, Inc. as to reasonableness of the amount, satisfied the claim of the Corps of Engineers and makes this claim over against respondent.

On June 11, 1953, the M. V. Waw Hoss, owned by Hill, was engaged, as she had been for some time prior thereto, in the service of locking barges back and forth through Harvey locks as a service to other tows. The Waw Hoss had a steel hull, was about 64 feet in length and 17 feet in breadth, and her propulsion engine was a General Motors diesel, Model 6-110, of approximately 275 horsepower, which was pilothouse controlled. The reversing marine clutch of the Waw Hoss was operated by a Tridyne positioner,

mounted on the engine, and the Tridyne positioner was in turn activated by a "B–3" pilotair valve. The pilotair valve consists of three identical on and off valve units flush mounted on the instrument panel in the pilothouse which supply air pressure to the Tridyne positioner.

On June 11, 1953, at or in the vicinity of the forebay on the Mississippi River side of the Harvey locks the Waw Hoss faced up to the barge STCO 121, a steel tank barge about 194 feet in length and 35 feet in breadth, which was without cargo, in a rigid tow, for the purpose of locking the barge through from the Mississippi River to the Harvey Canal. In the crew of the Waw Hoss, in addition to Hill who was acting as master and helmsman, there was a deckhand, Hanisee.

After the lock gates to the Mississippi River were opened, Hill pressed and released the forward button or valve unit of the pilotair valve, and the Waw Hoss proceeded into the locks at slow speed. Hanisee, the deckhand, was on the starboard bow of the barge for the purpose of tying her up in the locks. There was no current, it was daylight, and the weather was clear. When the bow of the STCO 121 was near the starboard lock wall, and about 100 to 150 feet from the lock gates on the Harvey Canal side, Hill sought to reverse the engine of the Waw Hoss by pressing, and then releasing, the neutral and reverse buttons of the pilotair control system.

The forward speed of the tow did not decrease, and Hill again sought to reverse the engine as before. Again the engine did not respond, and the speed of the Waw Hoss and her tow appeared to increase. Hill the third time sought to reverse the engine, without success, and then called to Hanisee to secure a line on a bollard on the lock wall. Hanisee was able to get a line from the barge on to a bollard on the lock wall, but because of the speed of the tow was not able to get sufficient turns on the bitt on the barge before the line ran out, blistering his hands. The port bow of the barge STCO 121 then struck the miter leaf gate

of the locks on the Harvey Canal side, inflicting damage to the gate.

Immediately after the casualty, and while the tow was in the locks, Hill went to the engine room to try to determine why the engine apparently did not reverse. After a search, he found that the Tridyne positioner and the engine reverse gear control valve for the reversing marine clutch had become disconnected because a bolt serving to connect linkage between the Tridyne positioner and the reverse gear control valve was not in place. In order to move the vessel out of the locks, Hill installed a one-fourth inch threaded bolt and nut from a supply aboard the vessel, and then backed the Waw Hoss and its tow out of the locks, mooring the Waw Hoss to the guide wall at the entrance to the locks on the Mississippi River side.

Shortly after the casualty and while the Waw Hoss still lay tied up to the guide wall, Earl C. Wood, marine surveyor on behalf of the Waw Hoss, boarded the vessel and, accompanied by Hill and Hanisee, went to the engine room. Wood found that the Tridyne positioner, which was mounted on a bracket attached to the after end of the engine reverse gear housing, was connected to the reverse gear control valve by means of a shop-made adjustable length link arm composed of a yoke-type knuckle joint on each end secured to the reverse gear control valve on the forward end by means of the one-fourth inch threaded bolt with one nut which had been temporarily installed by Hill, and on the after end by means of a one-half inch threaded bolt which had no nut. The one-half inch bolt was not drilled for a cotter pin. A bolt which undoubtedly had been in, and dropped out of, the forward end of the adjustable link arm was found behind the main starboard engine after end supporting bracket, and one nut was found on top of the clutch housing between the engine control valve and the clutch housing flange. This bolt was a one-fourth inch threaded bolt with a hexagonal head and was not drilled for a cotter pin. The nut was likewise one-fourth inch in diameter.

A search was made for additional nuts, but none was found.

The propulsion engine of the Waw Hoss had been purchased from and installed by George Engine Company, Inc. and the Tridyne positioner had been installed, and the linkage, including the two pins or bolts securing the linkage, had been furnished and installed by George Engine Company, Inc. pursuant to written agreement with Hill dated May 27, 1953. The work was completed on or about June 4, 1953. Although witnesses on behalf of George Engine Company, Inc. testified uniformly that the linkage was inspected after installation, and that double nuts were in position on each of the two bolts in question, the credible evidence, including findings made in the engine room after the casualty, indicate that there is grave doubt double nuts were employed. If double nuts were in fact employed, they failed to secure the linkage. The George Engine Company, Inc. witnesses conceded that vibration in the linkage as well as motion therein as a result of the use of the clutch could reasonably be expected. They testified such was the reason for the use of double nuts.

From the time of installation of the engine and the aforesaid linkage up to the time of the occurrence of the casualty, no difficulty was experienced in the operation of the M. V. Waw Hoss. While Hill was in and out of the engine room during installation, he did not participate actively in the work and had no knowledge of the manner of installation of the linkage. During the several days the vessel was operating after installation, Hill and Hanisee, the only two persons in the crew during the time in question, went in and out of the engine room for the purpose of performing such tasks as checking the oil in the engine and the water in the bilges. They did not inspect the installation of the linkage.

On inspection by surveyor Wood after the casualty, no deficiencies were found in the pilotair system of the Waw Hoss. In fact, air was heard exhausting or venting to the atmosphere through the pilotair valve units as Hill sought to reverse the engine immediately prior to the casualty. When the pilotair buttons or valve units are depressed, air pressure enters and operates the Tridyne positioner, and when they are released, the air pressure in the Tridyne positioner vents to the atmosphere. Thus, after the engine was placed in the ahead position on this occasion as the Waw Hoss started into the locks, pressure on the linkage was released and the bolt, having lost its nut, doubtless vibrated out. Consequently, although the Tridyne positioner was thereafter activated by the pressing of the pilotair buttons or valve units, the positions of the gear control valve and the clutch were not changed.

As a result of the casualty, the Corps of Engineers, United States Army, made claim against Hill in the amount of $12,-949.94; and although Hill denied responsibility for and called upon George Engine Company, Inc. to satisfy the claim, George Engine Company, Inc. declined to do so. In order to avoid referral of the claim to the United States Attorney for suit and collection, the incurring of legal costs and expenses, and the danger of a heavy judgment, Hill satisfied the claim of the Corps of Engineers. George Engine Company, Inc. approved the amount of the payment as fair and reasonable, without prejudice to the rights of George Engine Company, Inc. on the question of liability.

■ Hill was justified in paying the claim of the Army Engineers, for Hill was liable to the Corps of Engineers without regard to fault or negligence. 33 U.S.C.A. § 408; Hegglund v. United States, 5 Cir., 100 F.2d 68; New England Dredging Co. v. United States, 1 Cir., 144 F. 932; United States v. The Terry E. Buchanan, etc., D.C.S.D.N.Y., 138 F. Supp. 754; U. S. A. v. Inland Chief and Astoria, D.C.D.Or., 1954 A.M.C. 191; United States v. The Republic No. 2, D. C.S.D.Tex., 64 F.Supp. 373; Christenson S.S. Co. v. United States, D.C.E.D. Pa., 17 F.Supp. 241; The Gansfjord, D. C.E.D.La., 25 F.2d 736. Actually, this question in the final analysis resolves it-

self into one of reasonableness, and since George Engine Company, Inc. has agreed that the amount of the claim paid by Hill is fair and reasonable, there is no valid reason why said amount may not be asserted against George Engine Company, Inc.

■ At the time of completion of the work by George Engine Company, Inc., the bolts in the linkage were not properly installed. Even if double nuts had been used, and there is grave doubt that double nuts were in fact employed, as stated, the bolts were not properly secured. This particular bolt is described as a "floating pin or bolt" and the double nuts were not an effective locking device under the circumstances. Grant, surveyor for George Engine Company, Inc., conceded that it was possible that the double nuts had vibrated and/or worked off in the time interval involved.

Accordingly, George Engine Company, Inc. failed to perform its agreement properly, competently and safely. Newport News Shipbuilding & Drydock Co. v. United States, 4 Cir., 226 F.2d 137; Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 10 F.2d 769; Pan-American Petroleum Transp. Co. v. Robins Dry Dock & Repair Co., 2 Cir., 281 F. 97, certiorari denied 259 U.S. 586, 42 S.Ct. 589, 66 L.Ed. 1076; Bradshaw v. Monk et ux. et al., Super.Ct.Wash., 1952 A.M.C. 53. Although there is no expressed indemnity provision in the written agreement between the parties, it is now well settled that George Engine Company, Inc. nevertheless was under the implied obligation properly to perform the work and services thereunder and to hold Hill harmless from any foreseeable damages resulting from improper performance. Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 565, 78 S.Ct. 438, 2 L.Ed.2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 130, 76 S.Ct. 232, 100 L.Ed. 133.

That Hill did not discover or notice, and correct, the defective installation does not affect his right to recover indemnification of and from George Engine Company, Inc. It is clear that as between Hill and George Engine Company, Inc., George Engine Company, Inc. cannot use Hill's failure to discover and correct the unsafe condition created by George Engine Company's own negligence as a defense because "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra, 355 U.S. at page 569, 78 S.Ct. at page 442; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. at pages 132–133, 76 S.Ct. at page 236.

Hill is entitled to recover of and from George Engine Company, Inc. the sum of $12,949.94, with interest at the rate of 5% per annum from April 30, 1957, the date of payment of the claim of the Corps of Engineers by Hill, until paid, and costs.