KEMPER ARCHITECTS, P.C.,
a Wyoming Corporation,
Appellant (Defendant),

v.

McFALL, KONKEL & KIMBALL CONSULTING ENGINEERS, INC., a Colorado Corporation doing business in Wyoming, Appellee (Plaintiff).

No. 91–231.

Supreme Court of Wyoming.

Dec. 18, 1992.

Jane A. Villemez and Charles E. Graves of Graves, Santini & Villemez, Cheyenne, for appellant (defendant).

William H. Knapp and Byrum C. Lee, Jr. of Knapp, Lee and Cardi, P.C., Denver, CO, for appellee (plaintiff).

Before MACY, C.J., THOMAS, CARDINE and GOLDEN, JJ., and PRICE, District Judge.

PRICE, District Judge.

In this appeal, we are asked to examine the standard of performance to be applied in an action for implied contractual indemnity. The issue concerns professional engineering services supplied under the terms of an oral contract between the engineer and the architect. The architect appeals what it terms the improper application of tort standards to a breach-of-contract action. Additionally, the architect challenges several evidentiary rulings dealing with the hearsay exception for public records, redactions, and expert testimony. Finding the instructions adequately advised the jury and finding no abuse of discretion in the evidentiary rulings, we affirm.

The architect frames these issues for this Court's consideration:

1. Whether the trial court erred in applying tort standards to this suit by the architect against its subcontractor for implied contractual indemnity.

2. Whether the trial court's improper exclusion of evidence prejudiced the architect's ability to prove breach of contract by its subcontractor.

 A. Official records of the U.S. Army Corps of Engineers were admissible under the public records exception to the hearsay rule.

 B. References to the subcontractor's wrongful conduct should not have been redacted from admitted records.

 C. Testimony of the subcontractor's wrongful conduct, offered through a witness with first-hand knowledge, was admissible as lay opinion testimony.

The engineer rephrases:

1. The trial court applied the appropriate standards by which [the architect] was required to establish its claim against [the engineer] for implied contractual indemnity.

2. The evidentiary rulings by the trial court were proper.

 A. The trial court properly excluded [the architect's] proposed Exhibits A and L–1 based on their lack of trustworthiness.

 B. The redactions of portions of Exhibits L(2) and M were an appropriate exercise of the trial court's discretion.

 C. The trial court properly excluded expert opinion testimony from Laurence Seeba because he failed to qualify as an expert under W.R.E. 702.

I. Facts

McFall, Konkel & Kimball Consulting Engineers, Inc. (the engineer) designed a building's heating, ventilation, and air conditioning system (the system), which is the focus of this litigation. As a specialist in mechanical systems designs, the engineer performed the work under an oral subcontract with Kemper Architects, P.C. (the architect). The architect incorporated the variable air volume system into the architectural plans for a training and instructional facility built for the United States Army Corps of Engineers at F.E. Warren Air Force Base in Cheyenne, Wyoming.

As constructed, the system could not be "balanced" to provide the appropriate volume and air flow; consequently, the system failed to meet specifications. The project's prime contractor spent approximately $135,000 in converting the system to a constant volume design which corrected the deficiencies. The Corps of Engineers notified the architect that it would be liable for the additional cost.

During the subsequent federal administrative process of assessing damages, the engineer offered to provide legal counsel and expert witnesses for the architect. This offer never resulted in a final written agreement for representation or for indemnification. However, on February 1, 1990, during the period of indemnification-agreement negotiations, the engineer filed an appeal on the architect's behalf with the Armed Services Board of Contract Appeals.

Concurrently, the architect withheld payment of approximately $45,000 in fees it owed to the engineer. On May 14, 1990, the engineer reacted by filing this action, seeking payment. The architect answered and counterclaimed for indemnification. As a result, the engineer withdrew the

legal representation it had provided for the architect before the Board of Contract Appeals. Eventually, the architect paid $37,000 in damages in an agreed settlement of the government's claim, terminating the Board of Contract Appeals action.

Meanwhile, before the trial in the state proceeding, the district court granted a partial summary judgment in favor of the engineer, ordering the architect to pay a portion of the withheld engineering fees. At trial, the jury considered the remaining fee disputes and the counterclaim. The jury awarded the engineer its request of $8,627.60 for unpaid fees not covered by the partial summary judgment and found that the engineer had no duty to indemnify the architect. The architect appeals only the denial of indemnification.

## II. Discussion

### A. Negligence and the Standard of Performance

■ The architect maintains that the trial court committed reversible error by instructing the jury to apply a negligence standard to the engineer's performance. Two jury instructions are at issue:

### INSTRUCTION NO. 6

Under the theory of implied indemnity, [the architect] must prove by a preponderance of the evidence that [the engineer] produced a design which was due to [its] negligence and which caused [the architect] to suffer damages as a result of such design.

### INSTRUCTION NO. 7

In regard to the implied indemnity theory you are instructed that [in] performing professional services for a client, an engineer has the duty to have that degree of learning and skill ordinarily possessed by reputable engineers.

It is his further duty to use reasonable diligence and his best judgment in the exercise of his professional skill and in the application of his learning, in an effort to accomplish the purpose for which he was employed.

A failure to perform any such duty is negligence.

The degree of care, skill and judgment which is usually exercised by an engineer is not a matter within the common knowledge of jurors or lay persons. These standards are within the special knowledge of experts in the field of engineering and can only be established by their testimony. You may not speculate or guess what those standards of care, skill and judgment are but must attempt to determine[ ] this from the testimony of legal experts called for that purpose.

■ On review, this Court considers whether the instructions, taken as a whole, adequately and clearly advise the jury of the applicable law. *L.U. Sheep Company v. Board of County Commissioners of County of Hot Springs,* 790 P.2d 663, 672 (Wyo.1990). Reversible error from an improper instruction requires a showing on the record that substantial rights were affected. *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.,* 743 P.2d 880, 885 (Wyo.1987). Sufficient prejudice arises from a demonstration that the instruction confused or misled the jury with respect to the proper principles of law. *DeJulio v. Foster,* 715 P.2d 182, 186 (Wyo. 1986). A number of factors may be considered in measuring the degree of prejudicial error, including:

"(1) the extent to which there is conflict in the evidence on critical issues; (2) whether or not the respondent's argument to the jury may have contributed to the instruction's misleading effect; (3) whether or not the jury requested a rereading of the erroneous instruction or of related evidence; (4) the closeness of the jury's verdict; and (5) the effect of other instructions in curing the error."

*Condict,* 743 P.2d at 886 (quoting 1 California Forms of Jury Instruction, Procedures and Instructions § 1.13[3] (1987) (footnotes omitted)).

■ Initially, the engineer contends that the architect's objections to Instruction Nos. 6 and 7 were procedurally inadequate since the architect did not supplement its oral objections with proposed alternative

written instructions. In support of its argument, the engineer relies upon *Runnion v. Kitts*, 531 P.2d 1307 (Wyo.1975), *Texas Gulf Sulphur Company v. Robles*, 511 P.2d 963 (Wyo.1973), and *Logan v. Pacific Intermountain Express Company*, 400 P.2d 488 (Wyo.1965). While this Court has previously stated that waiver occurs when a litigant orally objects to the form or language of a jury instruction without submitting a proposed alternative written instruction, we have been less than consistent in our application of the alleged rule. *See, e.g., Davis v. Consolidated Oil & Gas, Inc.*, 802 P.2d 840 (Wyo.1990); *City of Cheyenne v. Simpson*, 787 P.2d 580 (Wyo. 1990); *TG v. Department of Public Assistance and Social Services, Sheridan (In re CH)*, 783 P.2d 155 (Wyo.1989); *Hashimoto v. Marathon Pipe Line Co.*, 767 P.2d 158 (Wyo.1989); *Condict*, 743 P.2d 880; *Haley v. Dreesen*, 532 P.2d 399 (Wyo.1975); *Runnion*, 531 P.2d 1307; *Texas Gulf Sulphur Company*, 511 P.2d 963; and *Logan*, 400 P.2d 488.

W.R.C.P. 51[1] provided in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The purpose of W.R.C.P. 51 is to require litigants to timely inform the trial judge of contended errors in the jury instructions so that corrections or modifications may be made, if necessary. *Davis*, 802 P.2d at 843; *Story v. State*, 721 P.2d 1020, 1045 (Wyo.), *cert. denied*, 479 U.S. 962, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986). Consistent with the plain language and purpose of W.R.C.P. 51, we now clarify that "[a]n objection stating distinctly the objectionable matter and the grounds for objection is sufficient" to preserve a jury instruction issue for appeal. 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2553 at 643 (1971). We acknowledge, however, that supplementation of an oral objection with proposed alternative jury instructions is the "better practice," and we strongly encourage such procedure. *Id.* at 635. Upon a review of the record, we are satisfied that the architect lodged sufficient objections to Instruction Nos. 6 and 7 for this Court to consider its arguments.

The core of the controversy between the parties required the determination of whether it was the architect or the engineer who assumed the ultimate responsibility for the system's failure. The "first instance" responsibility to the original claimant, the Corps of Engineers, was resolved by the architect's settlement agreement and payment. JUSTIN SWEET, LEGAL ASPECTS OF ARCHITECTURE, ENGINEERING, AND THE CONSTRUCTION PROCESS § 36.01 (3d ed. 1985). Indemnity derives from an express or implied contract and enforces one party's duty to respond for all the damages. *Wyoming Bank and Trust Company v. Waugh*, 606 P.2d 725, 730 (Wyo.1980). Because no express indemnity agreement existed between the parties, the doctrine of implied contractual indemnity must supply the means to determine the ultimate responsibility. *Richardson Associates v. Lincoln–DeVore, Inc.*, 806 P.2d 790, 811 (Wyo.1991). A cause of action for implied contractual indemnity arises "when there is a relationship between the party seeking indemnity and the party against whom indemnity is sought, such that the latter owes an independent duty to the former." *Vickery v. Reliable Electric Company*, 703 F.2d 488, 491 (10th Cir.1983) (citing *Pan American Petroleum Corporation v. Maddux Well Service*, 586 P.2d 1220, 1224 (Wyo.1978)).

The instruction dispute requires a determination of whether the trial court properly utilized a negligence standard to determine the engineer's underlying responsibility. A case which remains instructive is *Miller v. New York Oil Company*, 34 Wyo. 272, 243 P. 118 (1926). Miller owned an apartment house in Casper, Wyoming. The personal representative of a tenant who was asphyxiated from carbon dioxide poisoning in one of the apartment's bathrooms successfully sued Miller for negligence. The suit claimed Miller knew that a

---

1. Revised effective March 24, 1992.

gas water heater had been improperly installed and negligently failed to warn or correct the condition. While an appeal was pending, Miller agreed to a settlement. Afterward, Miller filed an action for indemnity against the company with which he had contracted to install the water heater, New York Oil Company. This Court defined New York Oil Company's duty to Miller as requiring the exercise of ordinary or due care, and Miller was required to prove that duty had not been performed. 34 Wyo. at 279, 243 P. 118. The Court ruled, under a sufficiency-of-the-evidence standard, that Miller established New York Oil Company's failure to exercise due care. 34 Wyo. at 282, 243 P. 118. New York Oil Company protested that indemnity should not be allowed since Miller "was adjudged guilty of negligence" in the suit by the deceased tenant's personal administrator. 34 Wyo. at 284, 243 P. 118. The Court held that Miller's liability in the first action "grew out of a non-delegable duty he owed the deceased." *Id.* Because Miller's negligence was constructive or secondary, he could still recover indemnity from New York Oil Company, the primarily negligent party, since its wrongful acts exposed Miller to liability. 34 Wyo. at 283–84, 243 P. 118.

In *Miller*, the court cited an equitable implied indemnity rule that between parties indemnity was available,

> "where one does the act or creates the nuisance, and the other does not join therein, but is merely exposed to liability and suffers damage. He may recover from the party whose wrongful act has thus exposed him. In such case the parties ·are not in *pari delicto* as to each other, though as to third persons either may be held liable."

34 Wyo. at 283, 243 P. 118 (quoting *Gray v. Boston Gas Light Co.*, 19 Am.Rep. 324 (Mass.1873)).

 The modern statement of indemnity is contained in the RESTATEMENT OF RESTITUTION:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another

er should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct.

RESTATEMENT OF RESTITUTION § 76 at 331 (1937). The rule applies to contractual or quasi-contractual duties as well as a duty to pay created by a tort. *Id.* at cmt. b. An essential principle of implied contractual indemnity states that the party seeking indemnity must be without active fault on his part. *Wyoming Johnson, Inc. v. Stag Industries, Inc.*, 662 P.2d 96, 102 (Wyo. 1983) (quoting *Eazor Express, Inc. v. Barkley*, 441 Pa. 429, 272 A.2d 893 (1971)); *Chirco Construction Company, Inc. v. Stewart Title and Trust of Tucson*, 129 Ariz. 187, 189, 629 P.2d 1023, 1025 (Ct.App. 1981); 42 C.J.S. *Indemnity* § 32 (1991).

*Owings v. Rose*, 262 Or. 247, 497 P.2d 1183 (1972), illustrates an implied contractual-indemnity cause of action brought by a group of architects against a structural engineering firm under the RESTATEMENT OF RESTITUTION. The architects contracted with the engineers to design a "superior floor" for a manufacturing plant but, following the completion of construction, the concrete floor cracked and eroded. *Owings*, 497 P.2d at 1185. After settling a lawsuit brought by the plant's owner, the architects sued the engineers for indemnity. The court required proof that (1) the party seeking indemnity had discharged a legal obligation or duty owed to a third party; (2) the party against whom indemnification was sought was also liable to the third party; and (3) as between the two parties, the obligation should be discharged by the party against whom indemnification was sought. *Id.* Applying these standards, the Oregon Supreme Court affirmed the jury's verdict that the engineers' negligence in their flooring design required them to indemnify the architects. *Id.* at 1186–88.

The architect in this case misreads its own authority in arguing that it was "severely prejudiced" by the challenged instructions. The architect says that the factually similar case of *Hill v. George Engine Company*, 190 F.Supp. 417 (E.D.La.

1961), should govern. However, a careful reading of *Hill* reveals that the implied contractual duty owed was breached by the negligent installation of an engine component. *Hill* owned a tugboat, the M.V. Waw Hoss, which towed barges through a series of Louisiana locks. During one trip, the tugboat's drive system failed to reverse, and a barge it was towing struck and damaged a lock gate. The drive system failed because a small bolt and nut had vibrated loose. *Hill* settled a damage claim with the Corps of Engineers and sued the George Engine Company, the company which installed the drive system, for indemnification. While no express indemnification agreement existed between the parties, the court found that the George Engine Company's implied-contractual-indemnity duty was to properly perform the work and services and "hold Hill harmless from any foreseeable damages resulting from improper performance." *Hill*, 190 F.Supp. at 420. The court ruled that the George Engine Company negligently installed the drive system and failed to perform its agreement properly, competently, and safely. *Id.* Instruction No. 6 was fully in accord with this precedent.

While the language of Instruction No. 6 represented an inelegantly phrased statement of the law, the instruction correctly required the architect to prove that the engineer was negligent in discharging its contractual duty to design the system. In its answer and counterclaim, the architect understood that, despite the contractual origin of the indemnity action, the engineer's underlying negligence was at issue. The architect averred that the engineer's "negligence is the direct and proximate cause" of the Corps of Engineers' claim and that the engineer was "entirely responsible" for the financial settlement the architect paid. The architect's action retained its character as being one for a breach of contract despite the fact that recovery turned upon the engineer's standard of performance. *Weyerhaeuser Steamship Co. v. Nacirema Operating Co.*, 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491 (1958); *Ryan Stevedoring Co. v. Pan–Atlantic Steamship*

*Corporation*, 350 U.S. 124, 134, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

■ Instruction No. 7 stated a standard of performance for an engineer performing a professional service. The architect challenges the standard-of-performance instruction, arguing that its burden was to prove that the engineer breached its contractual duty, not that a standard of care for professional engineers was violated. The architect's argument misstates the applicable law.

■ The distinction between a contract action and a tort action is that the breach of contract is the failure to perform a duty expressly stated or implied by the terms of the agreement, whereas a tort is the violation of a duty which is imposed by law. *Tamarac Development Company, Inc. v. Delamater, Freund & Associates, P.A.*, 234 Kan. 618, 675 P.2d 361, 363 (1984). The applicable standard of performance for the engineer was that which arose or was implied by the contract with the architect. Resolving the question of whether Instruction No. 7 stated an appropriate standard of performance requires an analysis of the duty imposed by the oral agreement between the architect and the engineer to design the system.

■ The traditional formulation of a professional's standard of performance directs: "An engineer's duty is to exercise such care, skill, and diligence as people engaged in the engineering profession ordinarily exercise under like circumstances." JAMES ACRET, ARCHITECTS & ENGINEERS § 1.08 at 12 (2d ed. 1984). This standard of performance is imposed by law in tort actions for negligence. *Weston v. New Bethel Missionary Baptist Church*, 23 Wash. App. 747, 598 P.2d 411, 414 (1978) (stating the rule that an engineer is guilty of negligence if he fails to apply the skill and learning which is required of similarly situated engineers). We recognize that the contracting parties may agree to a standard of performance which is greater than the typical "skill usually exercised by others of its profession" standard. *See, e.g., Town of Winnsboro v. Barnard & Burk, Inc.*, 294 So.2d 867, 877–78 (La.Ct.App.

1974) (en banc). In this action, however, no express contract terms existed which varied the standard of performance. *Richardson Associates,* 806 P.2d at 811.

 The oral agreement between the architect and the engineer called for a system design. Our task is to consider what standard of performance is implied by such an agreement. The architect argues that the engineer impliedly "agreed to provide a workable system useful to the Corps and to hold [the architect] harmless for damages incurred when the designed system would not work." We believe this statement overreaches by implying a warranty of fitness for a particular purpose is applicable to professional services. The implied warranty of fitness for a particular purpose is applicable to contracts for the sale of goods, not for professional services. *See* Wyo.Stat. § 34.1–2–315 (1991).

> An engineer, or any other so-called professional, does not "warrant" his service or the tangible evidence of his skill to be "merchantable" or "fit for an intended use." These are terms uniquely applicable to goods. Rather, in the preparation of design and specifications as the basis of construction, the engineer or architect "warrants" that he will or has exercised his skill according to a certain standard of care, that he acted reasonably and without neglect. Breach of this "warranty" occurs if he was negligent. Accordingly, the elements of an action for negligence and for breach of the "implied warranty" are the same.

*Audlane Lumber & Builders Supply, Inc. v. D.E. Britt Associates, Inc.,* 168 So.2d 333, 335 (Fla.Ct.App.1964), *cert. denied,* 173 So.2d 146 (Fla.1965). The sound policy reason to avoid an outcome-oriented standard, such as the one the architect suggests, is that the *"likely* understanding between the client and the professional designer is not that a *successful outcome* will be achieved when professional services are purchased but that the professional will perform as would other professionals." SWEET, LEGAL ASPECTS OF ARCHITECTURE, EN- GINEERING, AND THE CONSTRUCTION PROCESS,

*supra,* § 17.07 at 355 (emphasis in original).

We find nothing in the agreement between the architect and the engineer which would require a variance from the standard of performance applicable to professionals. Instead, we believe sound policy reasons support the continued vitality of the majority rule limiting liability to situations in which the professional is negligent.

> Architects, doctors, engineers, attorneys, and others deal in somewhat inexact sciences and are continually called upon to exercise their skilled judgment in order to anticipate and provide for random factors which are incapable of precise measurement. The indeterminate nature of these factors makes it impossible for professional service people to gauge them with complete accuracy in every instance. Thus, doctors cannot promise that every operation will be successful; a lawyer can never be certain that a contract he drafts is without latent ambiguity; and an architect cannot be certain that a structural design will interact with natural forces as anticipated. Because of the inescapable possibility of error which inheres in these services, the law has traditionally required, not perfect results, but rather the exercise of that skill and judgment which can be reasonably expected from similarly situated professionals.

*City of Mounds View v. Walijarvi,* 263 N.W.2d 420, 424 (Minn.1978).

 The use of expert witnesses to establish the professional standard of performance is consistent with Wyoming law. For example, a physician's performance can only be evaluated after expert opinion about the standard of care is offered unless the care is so obviously wanting in reasonable skill that laymen would discern it. *Roybal v. Bell,* 778 P.2d 108, 112 (Wyo. 1989); *Govin v. Hunter,* 374 P.2d 421, 424 (Wyo.1962). Similarly, expert opinion was required to determine if the engineering design submitted by the engineer was below the requisite level of professional skill and competence. *Govin,* 374 P.2d at 422– 23.

Instruction No. 7 accurately stated the professional standard of performance present in the contract between the architect and the engineer. Instruction No. 6 correctly defined a violation of that standard as occurring if the engineer was negligent. The question of whether indemnity should be allowed or denied on the basis of the engineer's breach of that standard or the architect's independent negligence then became a question of fact for the jury's determination. *Pearson Ford Company v. Ford Motor Company*, 273 Cal.App.2d 269, 78 Cal.Rptr. 279, 283 (1969).

### B. Evidentiary Disputes

The architect contends that its trial presentation suffered substantial prejudice on the basis of a series of challenged evidentiary rulings. The standard for appellate review of the trial court's evidentiary decisions states:

> [T]he rule is that the admissibility of evidence rests within the exercise of discretion by the trial court. The rulings of trial courts on these matters are given considerable deference and will not be reversed as long as some legitimate basis for the ruling is found. The burden is assigned to [the party who originally offered the evidence] on appeal to demonstrate an abuse of discretion with respect to the refusal to admit evidence that it offered.
>
> For these purposes, we apply our definition of an abuse of discretion as "an error of law committed by the court under the circumstances." We also invoke our definition of an abuse of discretion as a situation in which "a court acts in a manner which exceeds the bounds of reason under the circumstances."

*Stauffer Chemical Company v. Curry*, 778 P.2d 1083, 1101 (Wyo.1989) (citations omitted).

The architect challenges the trial court's refusal to admit two exhibits into evidence. Exhibit A was a letter directed to the architect by a Corps of Engineers contracting officer. Exhibit L(1) was a compilation of documents, including Exhibit A, which was prepared in conjunction with the architect's appeal to the Board of Contract Appeals. The architect argues that both documents were admissible as public records.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> . . . .
>
> (8) *Public records and reports.*— Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings and against the state in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness[.]

W.R.E. 803(8)(C).

The trial court, upon the engineer's objection, determined that both exhibits were untrustworthy since they contained hearsay statements alleging a design defect in the system. The architect argued that the evidence was needed to establish that the Corps of Engineers asserted a claim against the architect. However, the court noted that ample evidence was present in the record of the claim and that the existence of the claim was undisputed by the engineer.

The trustworthiness evaluation may be conducted by considering a nonexclusive list of four factors: (1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation. *Beech Aircraft Corporation v. Rainey*, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988), *on remand*, 868 F.2d 1531 (11th Cir.1989). While the documents appear to be timely, we shall consider each one individually.

Exhibit A was prepared by a deputy chief of the Contracting Division of the Department of the Army. It was a letter, addressed to the architect, purporting to restate "Findings of Fact" of the preparer's investigation of the system. The exhibit contained numerous statements attrib-

uted to nongovernmental officials. Many statements were attributed to various contractors and engineers and quoted from the "Contractor Daily Reports." In addition, the exhibit concluded with a statement that the architect, as the "AE" on the project, "was negligent in preparing the design for the HVAC System and it is liable."

 The architect placed no evidence before the court supporting the trustworthiness of the exhibit by demonstrating the investigator's skill or experience or that any hearings were held. Exhibit A contained numerous hearsay-within-hearsay statements which each required individual exceptions for admission. *Seaton v. State of Wyoming Highway Commission, District No. 1,* 784 P.2d 197, 200 (Wyo.1989). *See also John McShain, Inc. v. Cessna Aircraft Company,* 563 F.2d 632, 635–36 (3d Cir.1977). Under W.R.E. 803(8)(C), it remains improper to introduce out-of-court statements not made by the investigating government official when the purpose is to establish the truth of the matter asserted in the statement. 4 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 455 (1980 & Supp.1992).

While the architect argues that Exhibit A stated "findings" admissible under W.R.E. 803(8)(C), we find reason to disagree. A finding states investigative conclusions or opinions; however, the statement of legal conclusions, assessing negligence and liability for damages, exceeds the limits of a public record admissible under W.R.E. 803(8)(C). *Hines v. Brandon Steel Decks, Inc.,* 886 F.2d 299, 302 (11th Cir.1989), *on remand,* 754 F.Supp. 199 (M.D.Ga.), *aff'd,* 948 F.2d 1297 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1587, 118 L.Ed.2d 305 (1992); *Beech Aircraft Corporation,* 488 U.S. at 169–70, 109 S.Ct. at 450.

 Exhibit L(1) was a compilation of documents, including the letter separately presented as Exhibit A. Other documents included portions of various contracts, air conditioning specifications, the "Contractor Daily Reports" previously mentioned, and various letters from the architect, the engineer, and the Corps of Engineers. Exhibit L(1) stated no additional factual findings of the Corps of Engineers.

Certainly, Exhibit L(1)'s trustworthiness was questionable since it was prepared with a view toward possible litigation, initially in the form of an administrative appeal. The previously noted deficiencies of Exhibit A apply since that exhibit was contained within Exhibit L(1). The other documents contained in the compilation included numerous hearsay-within-hearsay statements and statements by nongovernmental officials, many advancing their own views regarding the system problems.

The trial court properly excluded Exhibit L(1). The exhibit, taken as a whole, failed to state any "factual findings resulting from an investigation" by the agency. Under W.R.E. 803(8)(C)'s provisions, only findings formally approved and adopted by the agency are admissible. 4 LOUISELL & MUELLER, FEDERAL EVIDENCE, *supra.* The inclusion of Exhibit A, the contract officer's letter, did not meet this standard since no evidence was offered that the letter represented a finding formally approved and adopted by the agency. In substance, Exhibit L(1) represented a compilation of staff reports, including Exhibit A, and other preliminary materials. The materials, as a compilation, may be considered as being prejudicial, irrelevant, cumulative, or of no probative value and, therefore, be excluded. *O'Dell v. Hercules Incorporated,* 904 F.2d 1194 (8th Cir.1990).

The architect failed to meet its burden to support the trustworthiness of Exhibit A and Exhibit L(1). We hold that the trial court did not abuse its discretion in refusing to admit the exhibits.

 Next, the architect challenges the trial court's decision to redact legal conclusions contained in two exhibits offered as public records under W.R.E. 803(8)(C). Exhibit L(2), offered by the architect, was the stipulated settlement for $37,000 between the architect and the Corps of Engineers. The trial court admitted the exhibit but ordered that a reference to "deficient design work performed by the mechanical engineering firm, McFall, Konkel & Kimball, through Kemper its principal" be re-

dacted. The architect's Exhibit M, styled a "Satisfaction of Judgment," stated that the architect paid the settlement amount and that the Corps of Engineers released any claims against the engineer, "the mechanical subcontractor, arising from its negligence in causing the design defect which resulted in the claim against Kemper Architects, the architect." The quoted language was redacted.

We find no abuse of discretion in the trial court's action. As previously noted, legal conclusions contained in public records are not admissible under W.R.E. 803(8)(C). Additionally, the trustworthiness of these two statements may be questioned. Without evidence to the contrary, it is quite conceivable, for example, that both documents were drafted by one of the parties to the administrative action with an interest in including a gratuitous legal conclusion for possible future litigation.

The architect contends, however, that these statements were opinions on ultimate issues which are admissible under W.R.E. 704. The record contains no indication that the architect presented this argument during trial, and the Supreme Court does not consider issues raised for the first time on appeal. *Squaw Mountain Cattle Company v. Bowen*, 804 P.2d 1292, 1296 (Wyo. 1991); *McCue v. McCue*, 776 P.2d 742, 745 (Wyo.1989).

 Finally, the architect argues that the trial court erred in refusing to qualify an expert witness and, subsequently, in refusing to admit the witness' lay opinion testimony. Laurence E. Seeba, Jr. was a mechanical engineer with the Corps of Engineers at the time of the trial. He conducted reviews of construction projects to determine if, using normal construction procedures, a project was feasible. When problems developed with the system, Seeba reviewed the project's plans and visited the construction site. He testified extensively regarding his firsthand factual knowledge.

The engineer objected, however, when Seeba offered his opinion that "the system is not designed as required." The trial court ruled that, if he were qualified as an expert, Seeba could offer his opinion. During questioning, the engineer's counsel and the architect's counsel asked Seeba about his experience with similar system designs:

Q. [BY THE ENGINEER'S COUNSEL] Have you ever designed a system that is comparable to the system that was designed by McFall, Konkel, Kimball for the training and instructional facility at F.E. Warren Air Force Base?

A. No, sir.

. . . .

Q. [BY THE ARCHITECT'S COUNSEL] Without regard to whether you have designed a system of this complexity, have you seen, in your experience with the Corps, the design of that complexity on a regular basis?

A. No, sir.

Q. And is this a unique design in that regard?

A. Yes, sir.

Q. Is it a design that is difficult, more difficult and more complex than any design that you have seen?

A. Yes, sir.

Q. And under those circumstances, would anybody be considered to be an expert on this particular design?

A. I could not answer that, I don't know. There may be some people qualified.

Expert testimony is permitted:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

W.R.E. 702. The trial court's determination of whether a testifying witness is qualified as an expert is a matter of discretion which will not be disturbed on appeal unless it is " 'clearly and prejudicially erroneous, and then only in extreme cases.' " *Caterpillar Tractor Company v. Donahue*, 674 P.2d 1276, 1286 (Wyo.1983) (quoting *Reed v. Hunter*, 663 P.2d 513, 517 (Wyo.1983)). For a witness to qualify as an expert, a determination must be made

that the witness has "adequate knowledge, whether acquired by formal education or otherwise, and the appropriate experience in any area in which he proposes to state an opinion." *Stauffer Chemical Company,* 778 P.2d at 1099. *See also* W.R.E. 702.

We hold that the trial court did not abuse its discretion in refusing to permit Seeba to testify as an expert witness. Seeba's admitted lack of experience with similar systems limited his testimony to information he acquired by personal knowledge. W.R.E. 602.

After Seeba failed to qualify as an expert, the architect contended that the trial court improperly denied it the opportunity to offer Seeba's testimony as opinion testimony by a lay witness. Opinion testimony by lay witnesses is allowed under Wyoming law.

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

W.R.E. 701. This Court has cautioned that conclusory testimony on hotly contested trial issues may be excluded as not being helpful to a determination of the facts in issue. *McCabe v. R.A. Manning Construction Co., Inc.,* 674 P.2d 699, 705 (Wyo. 1983).

W.R.E. 701 cannot be read to allow a witness who fails to qualify as an expert to offer opinion testimony "where the subject in question lies outside the realm of common experience and requires special skill or knowledge." 3 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 376 at 419 (Supp.1992). Topics demanding special experience, such as the appropriate mechanical design for an atypical heating and air conditioning system, require that only the testimony of a person possessing that special experience be received. *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 848 (10th Cir.1979).

Seeba's testimony indicated that the complex designs utilized by the engineer were beyond his individual competence and knowledge. Any opinions Seeba may have offered regarding possible defects in such designs would have been inappropriate under even the most liberal view of lay-opinion testimony. *United States v. Paiva,* 892 F.2d 148, 157 (1st Cir.1989). We would defeat the helpful purpose of expert witnesses, W.R.E. 702, if we were to permit those who fail to qualify to simply restate their opinions as lay witnesses, W.R.E. 701. We agree with the trial court that permitting Seeba to testify about design deficiencies would not have been proper.

## III. Conclusion

The trial court properly applied a negligence standard to the determination of whether the engineer breached its standard of care in an action for implied-contractual indemnity. Identifying the applicable standard of care required testimony from expert witnesses who were familiar with mechanical engineering practices. Additionally, the trial court did not abuse its discretion in its evidentiary rulings.

Affirmed.