**GARAMAN, INC., Appellant (Defendant),**

v.

**Danny WILLIAMS, A.I.A.,
Appellee (Plaintiff).**

No. 95–219.

Supreme Court of Wyoming.

March 13, 1996.

Floyd R. King of King & King, Jackson, for Appellant.

Robert W. Horn of Robert W. Horn, P.C., Jackson, for Appellee.

MACY, Justice.

Appellant Garaman, Inc. (the owner) appeals from the district court's order which granted a judgment in favor of Appellee Danny Williams, a licensed architect, (the architect) and which denied the owner's claims against the architect.

We affirm.

## ISSUES

The owner presents three issues for our review:

### I.

Whether professional negligence and the standard of care owed by an architect can be established by the defendant architect without the testimony of an additional expert witness.

### II.

Whether the evidence was sufficient to support the decision of the court that there was no breach of contract and that the architect did not cause the delay in opening.

### III.

Did the court err by not dismissing this action and ordering arbitration when the architect admitted during trial that the parties had agreed by contract that any disputes arising out of or relating to the agreement between the owner and architect would be arbitrated?

## FACTS

In 1992, the owner retained the architect to perform architectural services on the motel complex which the owner was constructing in Jackson. The construction project was divided into two phases. The architect prepared a standard contract to cover Phase I of the project. Although the owner did not execute the contract, the architect performed architectural services on Phase I. The architect also performed some architectural services on Phase II.

Phase I was completed in June 1993. When the owner did not pay the architect the entire amount which was due to him for his services, the architect filed a lawsuit in the district court against the owner. The owner filed a motion to dismiss the lawsuit, claiming that the written contract required the parties to submit the controversy to arbitration. After the architect denied that the written contract was effective because it had not been executed, the owner dismissed its motion, and the lawsuit continued in the district court.

The owner filed a counterclaim against the architect, claiming that the architect had been negligent in performing his architectural services and that he had breached his contractual duties to the owner. The district court held a bench trial during which it granted the architect's motion for a directed verdict on the owner's professional negligence claim. At the conclusion of the trial, the district court granted a judgment in favor of the architect for the amount due for his services and denied the owner's claim for breach of contract. The owner appealed to this Court.

## DISCUSSION

### A. Standard of Care

At the close of the owner's case, the architect moved for a directed verdict on the owner's claim that the architect had been negligent. The architect argued that he was entitled to have a directed verdict because the owner failed to present any expert testimony which would establish the standard of care applicable to the architect as a licensed architect or his breach of that standard of care. The district court agreed and granted the architect's motion. On appeal, the owner argues that independent expert testimony was not necessary because the architect, in his own testimony, established the applicable standard of care. The owner also claims that the architect's testimony confirmed its contention that the architect violated that standard of care.

Under our revised rules of civil procedure, motions for a directed verdict are known as motions for a judgment as a matter of law.

*Cargill, Incorporated v. Mountain Cement Company*, 891 P.2d 57, 62 (Wyo.1995); *see also* W.R.C.P. 50; W.R.C.P. 52(c). Since this case involved a bench trial, W.R.C.P. 52(c) governed the architect's motion.

■ The relevant portion of W.R.C.P. 52(c) states:

(c) *Judgment on partial findings.*—If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim ... that cannot under the controlling law be maintained ... without a favorable finding on that issue....

When we are reviewing a district court's decision to grant a judgment as a matter of law, we must take the unsuccessful party's evidence as being true and give it all favorable and reasonable inferences. *Kaiser v. Farnsworth Drilling Co., Inc.*, 851 P.2d 1292, 1295 (Wyo.1993).

■ We have not previously considered any cases which pertain to the standard of care applicable to architects. We have, however, considered cases which involved claims of negligence against attorneys, engineers, and physicians. *See, e.g., Moore v. Lubnau*, 855 P.2d 1245 (Wyo.1993) (attorneys); *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178 (Wyo.1992) (engineers); *Roybal v. Bell*, 778 P.2d 108 (Wyo.1989) (physicians). When professional negligence is asserted, we generally require the plaintiff to present expert witness testimony which reveals the standard of care applicable to the profession and the defendant's compliance with or breach of that standard. To that end, we stated in *Kemper Architects, P.C.* that an engineer must exercise such care, skill, and diligence as others who are engaged in the engineering profession would ordinarily exercise under similar circumstances. 843 P.2d at 1185. We believe that a like standard should apply to architects. *See* Robert M. Schoenhaus, Annotation, *Necessity of Expert Testimony to Show Malpractice of Architect*, 3 A.L.R. 4TH 1023 (1981). Therefore, testimony from an expert architect is generally required to establish the standard of care

under the circumstances of each case and the defendant architect's compliance with or breach of that standard.

■ The owner did not present any independent expert testimony to establish the standard of care or the architect's breach of that standard. It insists, however, that the architect was an expert and that his testimony established the standard of care and his breach of that standard. The owner specifically refers to a segment of the architect's testimony in which he admitted that he had a duty to know the applicable building codes and that, in certain instances, his design of Phase I did not comply with the codes as the Town of Jackson subsequently interpreted them.

We conclude that, under the facts of this case, the architect's testimony was not sufficient to establish the applicable standard of care. The architect's testimony about an architect's duty to comply with the code requirements was simply too general to be considered as establishing an appropriate standard of care. We, therefore, do not need to decide whether, as a general rule, a defendant's testimony may be used to establish the appropriate standard of care.

The architect acknowledged that he had testified previously as an expert witness and that he possessed the degree of care, skill, etc. which a reasonable, careful, and prudent architect would commonly possess. He testified that an architect has a duty to know the applicable codes when he is designing a building. The architect testified that he believed that he had designed the building to meet the applicable code requirements but that, in a few instances, the completed building did not comply with those requirements. He also acknowledged that an architect may, in certain circumstances, be responsible when his design does not comply with building code requirements.

The architect also indicated, however, that code requirements may be difficult to interpret. In the course of designing the project, he had gotten the Town's approval for certain aspects of the design, but, when the building was completed, the Town officials recanted and concluded that the code requirements had not been met.

■ The owner suggests that, when an architect fails in any way to comply with an applicable code requirement, he is negligent. We do not agree. Much of an architect's work involves the application of his professional judgment, and, as we have stated before, we do not require professionals to warrant perfect results; we only require that they exercise the appropriate degree of care. See Kemper Architects, P.C., 843 P.2d at 1186. The owner failed to question the architect in detail about the standard of care which applies when architects are faced with specific problems associated with interpreting and complying with building code requirements. The owner also did not question the architect about how a reasonably prudent architect would handle a situation in which the town changes its interpretation of the building codes between the time that the project was initially approved and the time that it was presented to the officials for final approval. The owner, therefore, failed to establish the applicable standard of care through appropriate expert testimony.

■ The owner also argues that it was not required to present expert testimony because the architect's performance was so deficient that laymen could discern the negligence. It is true that under Wyoming law expert testimony is not required when the professional's care was "so obviously wanting in reasonable skill that laymen would discern it." Id. See also Moore, 855 P.2d at 1249. We conclude, however, that this case did not fall within the exception to the expert testimony requirement. A layman simply would not have had sufficient experience to understand architectural concepts such as the interpretation of building codes without being aided by expert testimony. Since the owner failed to present expert testimony about the standard of care, the district court properly granted a judgment as a matter of law in favor of the architect.

### B. Sufficiency of the Evidence

■ At trial, the owner asserted that it directed the architect to design the basement area of Phase I so that the area could be used as a conference room. The owner in-

sisted that the architect breached the contract by failing to design the stairways which led to the basement area in accordance with the building code requirements for stairways which provide access to large conference rooms.[1] The architect maintained that the owner did not instruct him to design the area so that it could be used as a large conference room.

The building code required the stairways to be forty-four inches wide for a basement area which was going to be used as a conference room for more than forty-nine people and to be thirty-six inches wide when the area was going to be used for forty-nine people or less. The architect designed the stairways to be thirty-eight inches wide, and they were built to that width. The owner had the stairways reconstructed so that they would comply with the forty-four-inch width requirement. It claimed that the architect was responsible for the cost of the reconstruction and the revenue it lost when the motel opening was delayed because of the stairway reconstruction. The district court concluded that the architect had not breached his contractual duties and that the delay in the motel opening was not the architect's fault.

The owner contends that sufficient evidence did not support the district court's findings.

> In accordance with W.R.C.P. 52(a), this Court will not set aside a district court's findings of fact unless the findings are clearly erroneous. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). "'A finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Stated alternatively: "[A] determination

that a finding is against the great weight of the evidence means a finding will be set aside even if supported by substantial evidence." *Id. See also Samuel v. Zwerin,* 868 P.2d 265, 267 (Wyo.1994). We review a district court's conclusions of law *de novo* on appeal. *Hopper,* 861 P.2d at 538.

*McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 (Wyo.1994).

*ANR Production Company v. Kerr–McGee Corporation,* 893 P.2d 698, 701 (Wyo.1995).

The evidence which was presented at the trial was inconsistent with regard to the owner's directions to the architect about the planned use of the basement area. The architect testified that the owner directed him to design the area as a basement in the planning phase. The owner did not want to initially make the area accessible to handicapped people and did not want to address the parking problem which it would encounter if it were to use the area as a large conference room. The architect further testified that he, therefore, proceeded to design the stairways in accordance with the code requirements applicable to basements and small meeting rooms.

The architect also stated that the owner directed him to designate the area as a basement on the building plans which were presented to the Town for approval. The basement designation appeared in thirteen different places on the plans approved by the Town. The owner claimed that it directed the architect to get Phase I approved with a basement rather than with a conference room because it did not want to delay the approval of the project by having to address the parking issue at that time. The owner stated that the architect and the Town officials were aware of its plan to later change the intended use of the area after it addressed the parking problem. The architect presented a May 19, 1993, letter at the trial which was in conflict with the owner's

1. The owner has included a short discussion in its brief in which it claims that the architect breached his contractual duties by using a certain type of exterior finish material and by designing the building height and the balcony ceilings incorrectly. The owner does not, however, explain how the district court erred in its findings with regard to these issues. In the absence of a more comprehensive explanation of the owner's allegations of error, we refuse to address those issues on appeal. *McNeiley v. Ayres Jewelry Co.,* 886 P.2d 595, 597 n. 2 (Wyo.1994).

statement. The Town officials sent that letter to the owner, indicating that the Town considered the use of the basement as a conference room to be a new use and that the owner needed to get additional approval from the Town to make that change in the building plans.

The owner asserted that the way the area was designed and built confirmed its intention to use the area as a conference room. The walls and ceilings were nicely finished, and the ceiling was built higher than a normal basement ceiling would be built. In fact, the owner showed the architect a conference room in an older portion of the motel to demonstrate the need for a higher ceiling in a conference room. The basement area was equipped with an elaborate lighting system, a sound system, a projection screen, air conditioning, and heating. Two bathrooms were designated for future use. The owner's argument was also supported by a letter from the architect to the owner in which the architect indicated that he would compensate the owner out of his fee for the cost of changing the stairways.

Taking into account the conflict in the evidence, we cannot say that the district court's findings were clearly erroneous. The owner's decision not to initially make the basement area accessible to handicapped people in Phase I and its insistence on getting the Town's approval of the project with a basement rather than with a conference room supported the architect's assertion that the owner had not planned to use the area as a conference room when the project was being designed. Further, the special improvements which were included in the plans for the basement area were just as consistent with a plan to use the area as a small meeting room as they were with a plan to use the area as a large conference room. We also conclude that the letter in which the architect offered to pay the cost for changing the stairways was just one piece of evidence and that the letter could be interpreted as simply being an effort by the architect to keep peace

with the owner so that the owner would employ him to design Phase II of the project.

In determining which of the two conflicting stories was accurate in this case, the trial judge had to decide which witnesses were more credible. She was obviously in the best position to judge the credibility of the witnesses, and, on this record, we must defer to her decision. Since we conclude that the district court properly found that the architect did not breach his contractual duties to the owner by designing the stairways to comply with the code requirements for basements and small meeting rooms, the delay associated with reconstructing the stairways so that they would meet the requirements for large conference rooms cannot be attributed to the architect.

## C. Arbitration

The owner filed a motion to dismiss the lawsuit and a demand for arbitration, claiming that the parties' agreement required that they submit any disputes to arbitration. The architect contested the owner's motion, contending that the owner had never executed the agreement which included the arbitration provision. The owner subsequently dismissed its motion.

At the trial, the architect admitted that he prepared the written contract which the owner did not execute. He stated that the contract contained the terms of the parties' agreement and that all the terms in the agreement governed the parties' relationship. The owner claims that the architect's admissions confirmed the parties' agreement to arbitrate their disputes and that the district court erred by failing to dismiss the case and order it to arbitration. The architect argues that the owner waived its right to demand that the parties' disputes be arbitrated.[2]

We must closely scrutinize a claim that a party has waived its arbitration right. *Jackson State Bank v. Homar*, 837 P.2d 1081, 1086 (Wyo.1992). Waiver of a right is " 'the intentional relinquishment of a known right and must be manifest in some

---

**2.** The architect asserts several other arguments in support of his claim that arbitration was not appropriate in this case. Since our decision with

regard to the waiver is dispositive, we do not need to address the architect's other arguments.

unequivocal manner.' " *Id.* (quoting *Baldwin v. Dube,* 751 P.2d 388, 392 (Wyo.1988)).

We conclude that the owner waived its right to have the parties' disputes arbitrated. When the architect denied that an agreement to arbitrate existed, the owner could have made a request under Wyo.Stat. § 1–36–104(a) (1977)[3] for the district court to summarily decide whether the parties were bound by the arbitration agreement. *See Pioneer Water and Sewer District v. Civil Engineering Professionals, Inc.,* 905 P.2d 1245, 1246–47 (Wyo.1995); *Hot Springs County School District No. 1 v. Strube Construction Company,* 715 P.2d 540, 546 (Wyo. 1986). The owner did not, however, take advantage of its right under § 1–36–104(a). Further, the owner presented evidence at the trial of its intent to relinquish its right to have the parties' disputes arbitrated. The owner declared in its opening statement that, even though the architect acknowledged that the contract and arbitration clause were valid, it was willing to proceed with the trial.

## CONCLUSION

We hold that the district court properly granted a directed verdict against the owner on its professional negligence claim, that sufficient evidence supported the district court's decision, and that the owner waived its right to have the parties' disputes arbitrated.

Affirmed.

---

**3.** Section 1–36–104(a) provides:

(a) On application of a party showing an arbitration agreement and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to determine the issue raised and shall order or deny arbitration accordingly.