No. 13819

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

STANLEY W. FERGUSON et al.,

        Plaintiffs,

-vs-

TOWN PUMP, INC., and BOZEMAN TOWN PUMP,
INC.,

        Defendants and Third Party Plaintiffs and
           Appellants,

-vs-

WALLACE DITEMEN, INC., et al.,

        Defendants and Third Party Defendants and
           Appellants.

Appeal from:  District Court of the Eighteenth Judicial District,
             Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

    For Appellants:

        Bolinger and Wellcome, Bozeman, Montana
        G. Page Wellcome argued, Bozeman, Montana
        Brown, Pepper and Kommers, Bozeman, Montana
        Gene Brown argued, Bozeman, Montana

    For Respondents:

        Goetz and Madden, Bozeman, Montana
        James Goetz argued, Bozeman, Montana

Submitted:  April 28, 1978

Decided: JUN 1 3 1978

Filed: JUN 1 3 1978

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

Plaintiffs instituted this action against Town Pump, Inc. and Bozeman Town Pump, Inc. (hereinafter referred to as Town Pump) to recover damages resulting from the gasoline contamination of their household water wells. Town Pump filed a third party complaint for indemnification against Wallace Diteman, Inc. Plaintiffs thereafter amended their complaint to include Diteman as a joint defendant.

A jury trial was held in the District Court, Gallatin County, commencing December 6, 1976. At the close of the evidence, the court granted a directed verdict on the issue of liability against Town Pump and Diteman as joint tortfeasors. Town Pump's third party action against Diteman was dismissed. The jury was instructed only to determine the amount of plaintiffs' damages.

The jury returned a verdict totaling $60,656.00 and judgment was entered in that amount. Plaintiffs subsequently moved that the court either substitute a higher damage award or grant a new trial on the issue of damages. The court granted the motion for a new trial on the damages issue.

Defendants Town Pump and Diteman appeal from the granting of the motion for a new trial. Town Pump appeals from the dismissal of its indemnification claim against Diteman. Plaintiffs cross-appeal from the denial of their motion to mathematically increase the damage award, and also from the denial of their offered instruction regarding punitive damages.

Briefly summarized, the facts adduced at trial are: In the fall of 1972, Town Pump entered into an oral cost-plus labor contract with Diteman Construction Co. for the construction of a gasoline station on the west end of Bozeman, Montana. Diteman

-2-

was given general plans but there was little or no supervision of the construction by Town Pump. The work included the installation of two underground storage tanks and lines running from the tanks to the gas pumps. Diteman completed the job, and Town Pump leased the station to Richard and Patricia Hawkins for operation.

Plaintiff Ferguson, as well as the other plaintiffs, lives immediately north of the Town Pump station just outside the City of Bozeman and receives his household water from an underground well. In April 1974, Ferguson began noticing the odor and taste of gasoline in his water. Gradually over that spring and summer the other plaintiffs in the vicinity had similar problems with their water. In varying degrees with respect to the various households, the water became increasingly impotable. A trailer park in the area, Ponderosa Trailer Park, found gasoline in one of its three wells. (The residents of the trailer park have assigned their claims to the "Ponderosa Trust" for the purposes of this action.) Since that time, the plaintiffs, with the exception of the trailer park residents, have had to haul water from other sources for any uses requiring potable water.

In November 1974, the State Water Quality Bureau was notified. Its agents visited the area and conducted various tests in December, confirmed that there was gasoline contamination, and that the Town Pump Station was the probable source. In January 1975 standpipe tests were conducted revealing the likelihood of a leak in a gasoline line. The Department of Health issued an abatement order to Town Pump on January 25, 1975, after which the pumps connected to the suspected lines were shut down. The tanks and lines were excavated in March 1975 and the leak was found.

A union in one of the lines was cross-threaded causing the leakage. Large delivery trucks had been driving over the area

where the lines were covered, and settlement of the fill materials had occurred, apparently putting pressure on the faulty union. It was also found that double swing joints had not been used, contrary to industry standards. Such joints allow for some flexibility in the lines so that they better withstand any pressure.

Five issues are presented for review:

1. Whether plaintiffs' cross-appeal should be dismissed.

2. Whether the District Court erred in granting plaintiffs' motion for a new trial.

3. Whether plaintiffs' damages may be mathematically recalculated by this Court.

4. Whether the Court erred in directing a verdict against Town Pump on its indemnification claim against Diteman.

5. Whether the court erred in refusing plaintiffs' offered instruction on punitive damages.

Pending appeal, plaintiffs have executed on the judgment and obtained partial satisfaction from Town Pump in the amount of approximately $33,000. Diteman argues that plaintiffs have therefore waived their right to cross-appeal in this case, and moves that this Court dismiss plaintiffs' cross-appeal for that reason. This Court recently stated in Niles v. Carbon County, (1977), ____ Mont. ____, 568 P.2d 524, 34 St.Rep. 827, 829:

> "* * * The general rule is:
>
> "'* * * the right to accept the fruits of a judgment and at the same time to prosecute an appeal from it are not concurrent; on the contrary, they are wholly inconsistent rights. The election of one necessarily excludes the enjoyment of the other.' Peck v. Bersanti, 101 Mont. 6, 8, 52 P.2d 168, 169; In re Black's Estate, 32 Mont. 51, 53, 79 P. 554.
>
> "This rule is subject to the exception that:
>
> "'* * * where the reversal of a judgment cannot possibly affect an appellant's right to the benefit accepted under a judgment, then appeal may be taken and will be sustained

despite the fact that the appellant has sought and secured such benefit.' Peck v. Bersanti, 101 Mont. 6, 9, 52 P.2d 168, 169; In re Black's Estate, 32 Mont. 51, 79 P. 554."

The instant appeal falls squarely within the exception to the general rule. Plaintiffs have been awarded a new trial at the District Court level, and the question of whether they are entitled to keep the fruits of their judgment in light of that fact is not before this Court. Here plaintiffs have asked on appeal only that the damage award be increased mathematically. Where the only possible outcome of a successful appeal by a plaintiff is an increase in the damage award, then there is nothing inconsistent about accepting the fruits of the original judgment and appealing from it, and such an appeal may properly be taken. Peck v. Bersanti, (1935), 101 Mont. 6, 9, 52 P.2d 168, 169.

Diteman's motion to dismiss plaintiffs' cross-appeal is denied.

Turning to the merits of the case, we first consider whether the District Court erred in granting a new trial on the issue of damages.

Apparently plaintiffs' present wells have been permanently contaminated by gasoline. Defendants contended throughout the trial and presented some evidence to show that plaintiffs could obtain relief by the installation of charcoal filters in their water systems to filter out the gasoline. However, this method was offered as no more than a temporary measure. There was conflicting evidence regarding its efficacy and safety.

Expert witnesses presented by plaintiffs postulated two possible permanent solutions: (1) the digging of new, deeper wells, and (2) annexation to the city and connections to city water and sewer services. Estimated costs of new wells totaled about $86,000 for all the individual plaintiffs and $16,500 for the Ponderosa Trailer Park. City water and sewer services, in-

-5-

cluding landscaping and individual hookups were estimated to cost approximately $69,500 for all the individual plaintiffs and $129,500 for the trailer park.

The jury awarded approximately $43,500 in actual damages to the individual plaintiffs and $15,000 to the Ponderosa Trust.

It is clear from the record that the District Court granted a new trial on the issue of damages on the ground stated in section 93-5603(6), R.C.M. 1947: "Insufficiency of the evidence to justify the verdict * * *." It has long been the law of this state that:

> "* * * the District Court has broad discretion
> in granting or denying motions for a new trial.
> The District Court ruling will not be disturbed
> on appeal in the absence of a clear showing of
> manifest abuse of discretion." Yerkich v. Opsta,
> (1978), ____ Mont. ____, ___P.2d ____, 35 St.Rep.
> 465, 467.

See also: Davis v. Smith, (1968), 152 Mont. 170, 175, 448 P.2d 133; State Highway Comm'n v. Greenfield, (1965), 145 Mont. 164, 171, 399 P.2d 989. Such an abuse of discretion is established if the testimony was conflicting and the District Court merely chose to follow a different line of testimony than what the jury followed. Yerkich v. Opsta, supra.

Defendants attempt to justify the jury verdict by reference to some of the costs of city services testified to by plaintiffs' witnesses. They argue the jury must have awarded the individual plaintiffs the costs of city water services only; the installation costs of a charcoal filter; the costs associated with individual hookups to city water; and costs of landscaping. It is further argued that the $15,000 actual damage award to the Ponderosa Trust at least approximates the testimony that a new well could be dug for them at a cost of $16,500.

Even if it were possible to accurately reconstruct a jury verdict in this manner, then it would have to be concluded that the jury:

(1) Refused to award city sewer services along with city water, when the undisputed testimony was that the city would not provide water without installing a sewer.

(2) Awarded the installation costs of charcoal filters without regard to costs associated with their maintenance.

(3) Ignored undisputed testimony that it would take two years to provide city services, and that the inflation factor in the industry is 15 percent per year.

(4) Ignored the fact that since the Ponderosa Trailer Park lies between the individual households and the city, that the individual households would not be annexed without annexation of the trailer park.

The District Court instructed the jury in accordance with section 17-401, R.C.M. 1947, that the measure of damages "is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

While the jury could have considered other factors, such as the possibility of imminent annexation of the area regardless of the gasoline problem, as going to the issue of "proximate cause" this would not explain the inadequacy and inconsistency of the verdict in the light of uncontradicted testimony. Accordingly, we are unable to find a manifest abuse of discretion by the District Court in awarding a new trial.

We decline, however, plaintiffs' invitation to simply make a mathematical recalculation of damages. Plaintiffs rely on Zook Brothers Construction Co. v. State of Montana, (1976), ___ Mont. ____, 556 P.2d 911, 33 St.Rep. 809, 818, wherein such a recalculation was made. In Zook Brothers the Court said:

> "Where a verdict does not appear to have re-
> sulted from passion and prejudice, and any error
> may be ascertained by mathematical calculation,
> this Court may properly modify the judgment
> without reversing it." 33 St.Rep. 818.

The question of additur, at the appellate level, has not been previously ruled on by this Court, although Zook Brothers raised the trial court award.

While we are returning the instant case to the trial court for a new trial on damages, we find the rule adopted by the Supreme Court of Minnesota and cited in Seydel v. Reuber, (1959), 254 Minn. 168, 94 N.W.2d 265, 268, should be adopted in this state. There the court held:

> "The increase by additur was made on the grounds that the verdict was entirely inadequate. In that respect the trial court followed a recently adopted rule announced by this court that additur--the practice of the court to condition a denial of a new trial on the defendant's consent to an increase in the verdict--is within the constitutional power of the court. Genzel v. Halvorson, 248 Minn. 527, 80 N.W.2d 854. However, unless the use of additur increases the verdict, if entirely inadequate, to the extent that it reasonably comports with the proof in the record, a better result would be reached by granting a new trial." 94 N.W.2d 268.

In Zook Brothers the Court dealt with damages for breach of a construction contract, and the damages fixed by this Court involved relatively certain amounts as established by the business records of Zook Brothers, plus a claim for lost profits calculable on a percentage basis. The instant case, on the other hand, involves estimates of future costs in a highly inflationary industry, various alternative solutions to consider, and questions regarding the proximate cause of various costs which may be incurred. There are also questions of special damages and an issue of whether such damages were properly mitigated. While we agree the jury verdict was unreasonable, these questions are still questions that are properly within the province of a jury. We find the District Court did not abuse its discretion in ordering a new trial on the issue of special and general damages.

Next we consider the dismissal by the District Court of Town Pump's indemnification claim against Diteman. The court

ordered a directed verdict against Town Pump on the theory that Town Pump and Diteman were joint tortfeasors, and therefore no contribution should be allowed.

It should be noted that Town Pump's third party complaint includes counts for breach of contract and breach of implied warranty against Diteman. It was established at trial that Town Pump had an oral contract with Diteman for construction of the station on a cost-plus labor and materials basis. In this state, such a contract implies that the contractor will perform the work in a reasonably skillful and workmanlike manner, and the negligent failure to do so is a breach of contract as well as a tort. Garden City Floral Co., Inc. v. Hunt, (1953), 126 Mont. 537, 541, 255 P.2d 252.

With respect to an indemnification claim based on a tort, resort can be had to consideration of whether the negligence of each is "active" or "passive", or "primary" or "secondary", to determine whether the difference in the gravity of the fault of the participants is sufficient to justify burdening one party with the entire loss. Great Northern Railway Company v. United States, (D. Mont. 1960), 187 F.Supp. 690, 693; Fletcher v. City of Helena, (1973), 163 Mont. 337, 517 P.2d 365.

However, these cases do not apply to a theory of indemnity based upon contract. In an indemnity action arising out of contract, the "application of the theories of 'active' or 'passive' as well as 'primary' and 'secondary' negligence is inappropriate." Weyerhaeuser S.S. Co. v. Nacirema Operating Co., (1958), 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L Ed 2d 491, 495; Hill v. George Engine Company, (1961), 190 F.Supp. 417.

In reviewing a directed verdict all evidence is viewed in a light most favorable to the party against whom the verdict was directed. LaVelle v. Kenneally, (1974), 165 Mont. 418, 529 P.2d

788. Viewed in this manner, the record indicates that Town Pump and Diteman had a contract for the construction of the station and that the work was performed in violation of an implied duty to do the work in a reasonably skillful and workmanlike manner. Therefore, the order of the District Court granting Diteman a directed verdict on the indemnity claim should be set aside and a new trial ordered on this issue. This does not, of course, affect the liability of both Town Pump and Diteman as joint tortfeasors to plaintiffs, the negligence of both with respect to plaintiffs has been determined and is not contested on this appeal.

The final issue is whether the District Court erred in refusing plaintiffs' offered instruction regarding punitive damages against Town Pump. Section 17-208, R.C.M. 1947, provides:

> "In any action for a breach of an obligation
> not arising from contract, where the defendant
> has been guilty of oppression, fraud, or malice,
> actual or presumed, the jury, in addition to the
> actual damages, may give damages for the sake of
> example, and by way of punishing the defendant."

Under this statute, it is necessary to prove more than mere negligence; such willful disregard of duty amounting to actual or implied malice must be shown. Spackman v. Ralph M. Parsons Co., (1966), 147 Mont. 500, 414 P.2d 918. Implied malice may be shown by proof that defendant engaged in a course of conduct knowing it to be harmful and unlawful. Miller v. Fox, (1977), _____ Mont. ____, 571 P.2d 804, 34 St.Rep. 1367; Cashin v. Northern Pacific Ry. Co., (1934), 96 Mont. 92, 28 P.2d 862.

Plaintiffs contend that Town Pump knew the leak existed in the summer of 1974, but did nothing to remedy the problem until ordered to do so by the Department of Health in January 1975. In this context, Patricia Hawkins, lessee of the station, testified that she was informed of a gas line leakage by a resident of the neighborhood in the summer of 1974 and that she conveyed this

-10-

information to Town Pump authorities. There is also evidence of other indications of a possible leakage, including hesitating pumps and minus inventory figures.

While these factors are certainly indicators of the negligence of Town Pump, we do not find they support a finding of actual or implied malice. The record indicates that no one, not even the Department of Health authorities, knew for certain that Town Pump was the source of the gasoline contamination until January 1975; after that time Department of Health officials received the full cooperation of Town Pump. While there is evidence from which it may be inferred that Town Pump should have discovered the problem earlier, there is no evidence that Town Pump knowingly continued to dump gasoline into the ground. The District Court correctly refused plaintiffs' instruction regarding punitive damages, since there was no evidence of actual or implied malice on the part of Town Pump.

Diteman's motion to dismiss plaintiffs' appeal is denied. The District Court order of a new trial on the issue of actual and special damages is affirmed. The dismissal of Town Pump's indemnification claim against Diteman is reversed, and a new trial is ordered on that issue. The District Court's denial of plaintiffs' offered instruction regarding punitive damages is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-11-