No. 80-192

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

TOWN PUMP, INC., and BOZEMAN
TOWN PUMP, INC.,

Plaintiffs and Appellants,

vs.

WALLACE DITEMAN,

Defendant and Respondent.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin.
The Honorable Frank Blair, Judge presiding.

Counsel of Record:

For Appellant:

Landoe, Brown, Planalp, Kommers & Lineberger,
Bozeman, Montana

For Respondent:

Page Wellcome, Bozeman, Montana

Submitted on briefs: November 20, 1980

Decided: January 12, 1981

Filed: JAN 12 1981

*Thomas J. Kearney*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Town Pump, Inc. and Bozeman Town Pump, Inc. appeal from an adverse judgment in their indemnity action against Wallace Diteman d/b/a W. D. Construction, rendered in the District Court, Eighteenth Judicial District, Gallatin County.

Town Pump's indemnity claim arose out of an action by various landowners whose water wells had been polluted by gasoline escaping from a gasoline station in Bozeman, owned by Town Pump. The original suit was brought against Town Pump, owner of the gas station, and Wallace Diteman, d/b/a W. D. Construction Company, the construction company building the gasoline station. In the original action, Town Pump cross-claimed against Diteman for indemnity. The first jury trial brought in a verdict against both Town Pump and Diteman in favor of the landowners. Town Pump's suit for indemnity was dismissed by the court in the original action. On appeal to this Court, we reversed the jury award and ordered a new trial on the question of damages. We also reversed the District Court's dismissal of the indemnity action. Ferguson v. Town Pump, Inc. (1978), ____ Mont. ___, 580 P.2d 915, 35 St.Rep. 824.

The new trial on the question of damages resulted in an award to the landowners in the sum of $96,224.52. This award was paid one-half each by Town Pump and Diteman.

The indemnity action was tried in the District Court before a jury. Town Pump had moved for a summary judgment which was denied. After the jury trial, a verdict was returned in favor of Diteman. Town Pump appeals from the denial of the summary judgment and the jury verdict.

-2-

Diteman cross-appealed, claiming he is entitled to attorney fees for his successful defense of the indemnity action.

Town Pump's brief on appeal does not set forth the legal issues it raised for our consideration. It is clear, however, that Town Pump contends that under Ferguson, the cause was remanded on the theory of indemnity based on contract and that therefore consideration of theories of "active" or "passive" as well as "primary" and "secondary" negligence was inappropriate. Diteman contends that each party was guilty of respective failures to fulfill duties which they owed to the landowners, and to each other, so as to be in pari delecto in the proximate cause of the landowners' damages. Diteman's cross-appeal for attorney fees arises because Town Pump claimed attorney fees in the indemnity action and Diteman claims the reciprocal statute, section 28-3-704, MCA, entitles him to attorney fees as the successful party.

We affirm the judgment of the District Court that Town Pump is not entitled to indemnity in this case, and further that Diteman is not entitled to recover his attorney fees.

In the fall of 1972, Town Pump entered into an oral cost-plus labor contract with Diteman Construction Company for the construction of a gasoline station on the west end of Bozeman, Montana. The work included the installation of two underground storage tanks and lines running from the tanks to the gasoline pumps. At the completion of construction, the gas station was leased to third parties for operation.

Patricia Hawkins began employment as the operator of the Town Pump station in March 1973, and continued to operate the station until approximately August 1976. Soon after

-3-

assuming her duties, she reported several times to her supervisor that one of the gas pumps would hesitate upon being turned on before the gasoline would begin coming out of the nozzle. The hesitation increased in the morning after the pump had not been used overnight. It was developed in the evidence that such hesitation is an indication of leakage in the lines, since the hesitation results from a lapse of time for suction when the pump is turned on to bring the gas to the point of the nozzle.

Town Pump made no response to the reports of Hawkins respecting the hesitating pump condition.

Patricia Hawkins also noticed in the gasoline inventory reports which she had to make regularly, that there was an increasing loss from the regular gasoline storage tank. She reported her observation of this decreasing inventory to her superiors again on several occasions. The supervisor for Town Pump, however, regarded the gasoline deficiencies as being within normal acceptable limits.

Patricia Hawkins also noticed that a depression had developed in the asphalt pad in the area where the tanker trunks parked to unload the gasoline into the storage tanks. She first observed this condition in the summer of 1973. She reported this to her supervisor. She also questioned Diteman about the depression and Diteman said the ground was probably settling. Diteman told her that the gasoline truck tankers should not park in the area where the settling was occurring but should park on the asphalt beside the pumps. She attempted to get truck drivers to follow these instructions, but they did not do so. She made a written report of the asphalt depression to her supervisor on July 1, 1973.

About a year later, Patricia Hawkins was interviewed by an owner from a nearby trailer court concerning the presence of gasoline in his well water. She reported this complaint to her supervisor but Town Pump made no response.

The consequences of gasoline leakage appeared to be well-known to the Town Pump personnel. Its officers were aware that gasoline leakage could cause problems such as water pollution and fire hazards.

On January 22, 1975, the Department of Health issued an abatement order. Tests had indicated that leakage from the gasoline lines at the Town Pump station was seeping into the water wells of the landowners nearby.

In March 1975, Town Pump excavated the gasoline delivery system. The excavator found a large amount of gasoline in the area of a 45-degree elbow in the gasoline lines. The elbow was obviously leaking gasoline. When the lines were taken apart, it was found that the elbow had been cross-threaded by Diteman in its original installation and that the cross-threading was a source of the gasoline leak from the lines. It further appeared that Diteman had failed to install swing joints in the gasoline lines (joints designed to absorb pressure and movement of buried pipelines); and that the material used for fill around the lines and the buried gasoline tanks was unstable.

The District Court's instructions to the jury included these in pertinent part: That the right of indemnity exists for the benefit of a person who without wrongful conduct on his part is liable to pay damages caused by the negligence of another person, which liability arises from a breach by the other person of an implied contractual duty; if the fault of the plaintiff and the defendant were equal in grade and similar in character, indemnity was not available; the

-5-

usual instruction on proximate cause; the contract between the plaintiff and the defendant implied the defendant would perform his work in a reasonably skillful and workmanlike manner; that Town Pump was entitled to rely on Diteman to discharge the contractual obligation in a reasonably skillful and workmanlike manner; that Diteman could not use Town Pump's failure to discover and correct Diteman's breach of warranty as a defense; and that for the defendant to raise the defense that Town Pump failed to correct or remove the dangerous condition, Town Pump must have had actual knowledge of the existence thereof.

Those instructions, as we shall see, properly tendered to the jury, the issues to be decided under the facts of this case.

Town Pump, in making its motion for summary judgment, and in objecting to certain of the instructions given by the District Court, was relying on a paragraph from our decision in Ferguson, as follows:

> "However, these cases do not apply to a theory of indemnity based upon contract. In an indemnity action arising out of contract, the 'application of the theories of "active" or "passive" as well "primary" and "secondary" negligence is appropriate.' Weyerhaeuser S. S. Co. v. Nacirema Operating Company (1958), 355 U.S. 563, 569, 78 S.Ct. 438, 442, 2 L.Ed.2d 491, 495; Hill v. George Engine Company (D. La. 1961), 190 F.Supp. 417."

The cited paragraph is a direct quotation from the Weyerhaeuser case. However, it should not be accepted as absolute. Even if a breach of implied warranty occurs so as to cause a defect, the warrantee may also be guilty of subsequent negligence which concurring with the defect is a proximate cause of injury to third persons. Such subsequent negligence not only makes the warrantee liable to the third person, but negates his right to indemnity for damages paid by warrantee to the third party as a joint tortfeasor. The

-6-

United States Supreme Court recognized this in _Weyerhaeuser_ when it said in an earlier passage:

> "We believe that respondent's contractual obligation to perform its duties with reasonable safety related not only to the handling of cargo, as in _Ryan_, but also to the use of equipment incidental thereto, such as the winch shelter involved here. (Citing cases.) If in that regard, respondent rendered a substandard performance which led to foreseeable liability of petitioner, the latter was entitled to indemnity _absent conduct on its part sufficient to preclude recovery._ The evidence bearing on these issues--petitioner's action in making the shelter on its ship available to respondent's employees in Boston although it apparently was unsafe, as well as respondent's continued use of the shelter for five days thereafter without inspection--was for jury consideration under appropriate instructions . . ." _Weyerhaeuser_, 355 U.S. at 567, 78 S.Ct. at 441, 2 L.Ed.2d at 494. (Emphasis added.)

Where, as here, a warrantee is supplied a defective mechanism or system which constitutes a breach of implied warranty on the part of the supplier, but the warrantee's subsequent conduct constitutes negligence which concurs as a proximate cause of injury to third parties, the warrantee loses his right to indemnity because of that subsequent conduct which precludes his right to recover. This is the net effect of the holding of the United States Supreme Court in _Weyerhaeuser_.

Whether one regards it as a rule under indemnity, or as an application of the principal of proximate cause, or of the rule requiring mitigation of damages, there can be no recovery for damages which might have been prevented by reasonable efforts of the claimant. Brown v. First Federal Sav. & L. Ass'n. of Great Falls (1969), 154 Mont. 79, 88, 89, 460 P.2d 97, 102.

In any event, all that is required of the nondefaulting party in a contractual arrangement is that he act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by a default. Business Finance Co., Inc. v. Red Barn, Inc. (1973), 163 Mont. 263, 268, 517 P.2d 383, 386.

Under the instructions of the District Court, the right of indemnity existed for the benefit of Town Pump if without wrongful conduct on its part, it was liable to pay damages caused by the negligence of Diteman, which liability to pay such damages had arisen from the breach by Diteman of an implied contractual duty owed to Town Pump. The subsequent negligent conduct of Town Pump, as apparently found by the jury, precludes its recovery for indemnity here.

In Hill v. George Engine Company, supra, relied on by Town Pump, it appears that the engine company had a contract to install an engine in a tugboat and did so in such manner that it was impossible to reverse the tugboat engines. The tugboat struck the gate of a canal lock as a direct result of that inability so that the tugboat became liable to the Army Corps of Engineers for the damages. The tugboat owner sought indemnification from George Engine Company. Indemnification was allowed. Hill v. George Engine Company, supra, is readily distinguishable from this case, where for sometime after Town Pump knew or should have known of the defective condition, it did nothing to prevent injury to third persons.

We therefore find that the verdict of the jury on the indemnity issue is based on substantial evidence. The judgment of the District Court based on that verdict is affirmed.

On the cross-appeal, Diteman contends that he is entitled to recover his attorney fees in defending the indemnity action brought by Town Pump. He bases this contention on the fact that Town Pump claimed attorney fees as a part of its loss on the indemnity action and that under the reciprocal statute, section 28-3-704, MCA, Diteman is entitled to his attorney fees as the successful party.

-8-

The measure and mode of compensation of an attorney is left to the agreement, express or implied, of the parties. Section 25-10-301, MCA. Attorney fees are not reasonable and necessary expenses recoverable as costs in a suit. Kintner v. Harr (1965), 146 Mont. 461, 480, 408 P.2d 487. Diteman's oral contract to construct the gasoline station did not include an express agreement to pay attorney fees to Town Pump. Section 28-3-704 grants a reciprocal right to attorney fees only when the other party has an express right to attorney fees. Since Town Pump did not have an express right to recover attorney fees Diteman's claimed reciprocal right to recover attorney fees cannot exist.

The judgment of the District Court is affirmed; the cross-appeal is dismissed.

_____
                        Justice

We Concur:

_____
          Chief Justice

_____

_____

_____
              Justices