No.   92-380

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

WILLIAM B. MALONEY and
MARGARET N. MALONEY,

     Plaintiffs and Appellants,

-v-

WILLIAM HEER and JOYCE I, HEER,

     Respondents and Appellants.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and for the County of Park,
The Honorable Byron L. Robb, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Larry Jent, Williams, Jent & Dockins, Bozeman,
Montana

     For Respondent:

          Joseph T. Swindlehurst, Huppert & Swindlehurst,
Livingston, Montana

**FILED**

APR 8 - 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  January 14, 1993

Decided:  April 8, 1993

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiffs William B. Maloney and Margaret N. Maloney (Maloneys) appeal the decision of the District Court of the Sixth Judicial District, Park County, in their action for breach of a real estate contract which awarded damages to the Maloneys for their costs of a survey of the property but denied other damages and attorney's fees. Defendants William and Joyce I. Heer (Heers) cross-appealed, claiming there was no breach, that the Maloneys were precluded from pursuing this appeal, and that the claim was barred by the statute of limitations. We affirm in part, reverse in part, and remand.

The restated issues for appeal are:

1. Did the District Court err when it denied the defendants' motion for summary judgment on the basis of the statute of limitations?

2. Were the plaintiffs precluded from pursuing this appeal by their acceptance of damages?

3. Did the District Court err in finding a breach of contract which did not affect marketability of title?

4. Did the District Court award the correct damages to the Maloneys?

5. Did the District Court err by not awarding attorney's fees to the plaintiffs?

The Heers and the Maloneys entered into an agreement for the sale of the Parkway Motel in Livingston, Montana on August 16, 1985. The agreement provided, among other things, that the Heers would assign their Burlington Northern railroad lease to the

Maloneys at closing. Subsequently, the parties executed a contract for deed on September 16, 1985.

The contract for deed stated there was a Burlington Northern railroad lease held in connection with the premises which the Heers would assign to the Maloneys. Both the Maloneys and the Heers were mistaken about the area covered by the lease. Although the Maloneys inspected the property several times before closing on the contract for deed, they did not inspect a copy of the lease. The contract for deed also included a provision agreeing that the sellers made no representations not included in the agreement and that the purchasers relied on their own knowledge and inspection of the premises.

On December 6, 1985, the railroad sent the Maloneys a lease application letter which stated that the Maloneys had "purchased the motel that encroaches on our property." The application described the same area as the prior lease. On January 14, 1986, the Maloneys returned the completed application to the railroad. In answering questions in the application, the Maloneys stated that the use to be made of the site was a motel encroachment and listed a "portion of the motel" as a response to the question asking for a list of all buildings or structures presently on the site covered by the lease. The railroad returned executed leases on October 10, 1986 for an indefinite term at the rate of $180 per year, reserving the right to change the lease rate in the future.

Neither the buy/sell agreement nor the contract for deed specifically disclosed any encroachment of the motel building or

3

appurtenances into the railroad right of way. The buy/sell agreement stated that, "the real property is to be conveyed by warranty deed . . . Both the real and personal property shall be free and clear of all encumbrances except those described in this agreement." The contract for deed provided that the property would be conveyed "by good and sufficient warranty deed, accompanied by a title insurance policy showing merchantable title." At the time the District Court issued its findings and conclusions on April 2, 1992, both the Maloney-Heer contract for deed and the contract for deed between the Heers and the prior owners (Kovashes) were still in escrow. The Kovashes had transferred the railroad lease to the Heers on June 16, 1978 after selling the motel to the Heers in 1977. That lease stated that it was for "maintaining and operating thereon a portion of a motel." An attached diagram indicated a 20' by 20' area. The Heers' subsequent lease dated June 16, 1978 makes no reference to the motel. Joyce Heer testified the Heers had been told by Mr. Kovash when they purchased the motel that the lease was for parking.

The Maloneys have operated the motel since September of 1985. In 1988, when Mr. Maloney contacted a real estate office in Livingston, the realtor was unwilling to take the listing because of the encroachment. The Maloneys then hired a surveyor to survey the property, incurring survey fees of $1,895.50. The surveyor determined that the encroachments consist of a small triangular portion of the motel building (about 115 square feet), tiny parts of a planter/sign and of a swimming pool/garbage storage area

4

(about eight and twelve square feet, respectively) in the central parking area, and a small part of the motel eaves on the south end of the building.

The Maloneys unsuccessfully tried to negotiate a long-term lease with the railroad. After the Maloneys initiated this action, the Heers' attorney assisted the Maloneys in obtaining a new railroad lease for a strip four times as large as the area covered by previous leases with an annual rent of $384. This lease commenced August 1, 1990 and will end July 31, 2020, with an option to renew for two succeeding ten year periods--a total of fifty years. The Heers expert testified that the new lease term exceeds the foreseeable thirty to forty-year useful life of the motel for ordinary real property depreciation purposes.

The District Court determined that the present value of the lease assigned with the motel purchase and the present value of the new lease for fifty years differed by only $2,495.63, a nominal amount over that period of time and not a reasonable basis on which to award damages. Further facts will be provided throughout this opinion as necessary.

I.

Is the Maloneys' claim for breach of contract barred by the statute of limitations?

The Heers raised this issue in a motion for summary judgment. Our standard of review for a District Court's conclusion of law is whether it is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. The Heers contend that the

5

two-year limitations period for fraud and mistake under § 27-2-203, MCA, applies to this action instead of § 27-2-202, MCA, which allows an eight-year period for contract actions founded upon a written instrument. They claim that this case involves a mutual mistake relating to the railroad lease and is not a contract action governed by § 27-2-202, MCA.

This Court recently held that § 27-2-202, MCA, governed an action on a contract for deed which affected real property boundaries. See Larson v. Undem (1990), 246 Mont. 336, 805 P.2d 1318. In that case, the vendors breached the contract when they sold the property without first obtaining written consent from their vendor and by failing to provide an accurate legal description of the property. Larson, 805 P.2d at 1321. We conclude that the gravamen of the claim pursued here is a breach of contract action governed by the eight-year statute of limitations provided for in § 27-2-202, MCA. See Erickson v. Croft (1988), 233 Mont. 146, 760 P.2d 706.

We hold the Maloneys' breach of contract claim was not barred by the statute of limitations.

## II.

Are the Maloneys precluded from pursuing this appeal by accepting damages paid to them from funds held by the court?

The Maloneys deposited funds with the court rather than make their payments under the contract directly to the Heers pending disposition of this case. They accepted payment from these funds for survey costs awarded to them in this action. The Heers contend

6

that by accepting the $1,895.50 from the court, the Maloneys cannot now appeal from the District Court's judgment because they have acquiesced in the judgment.

The Heers cite Niles v. Carbon County (1977), 174 Mont. 20, 568 P.2d 524; LeClair v. Reiter (1988), 233 Mont. 332, 760 P.2d 740; and Peck v. Bersanti (1935), 101 Mont. 6, 52 P.2d 168, in support of their contentions. These cases do not support their argument. Niles and LeClair provide that a party who has a judgment entered against him and who allows the judgment to be executed against him or pays the judgment voluntarily cannot then appeal if his conduct is inconsistent with the appeal. Peck holds just the opposite of what the Heers have contended.

In Peck, we discussed the general rule on this issue that one cannot both accept the fruits of a judgment and appeal from it at the same time. Peck, 52 P.2d at 169. This Court has also recognized the exception to the general rule--

> where the reversal of a judgment cannot possibly affect an appellant's right to the benefit accepted under a judgment, then appeal may be taken and will be sustained despite the fact that the appellant has sought and secured such benefit.

Peck, 52 P.2d at 169.

After Peck, this Court again discussed the general rule and the exception in Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 580 P.2d 915. In Ferguson, the plaintiffs asked on appeal for damages to be mathematically increased. This Court stated that

> Where the only possible outcome of a successful appeal by a plaintiff is an increase in the damage award, then there is nothing inconsistent about accepting the fruits of the original judgment and appealing from it, and such

7

an appeal may properly be taken.

Ferguson, 580 P.2d at 918. Ferguson is directly on point here. The Maloneys have appealed to increase their damage award. Although the issue whether the District Court erred in granting the Maloneys damages for survey costs is before the Court, it is the Heers who cross-appealed that issue, not the Maloneys.

We hold that the Maloneys are not precluded from pursuing this appeal by accepting damages for their costs of survey.

## III.

Did the District Court err in finding a breach of contract which did not affect marketability of title?

The Heers contend that there cannot be a breach of contract where the title was not rendered unmarketable and the plaintiffs suffered no damage to cure the breach of contract. They maintain that an encroachment which is minimal and does not expose the buyer to a reasonable prospect of litigation is not unmarketable.

The District Court here found that the Heers breached the contract and awarded the Maloneys $1,895.50 for their costs to survey the property. The breach here is a contract breach of the covenant against encumbrances. The contract for deed provides in pertinent part:

> IT IS MUTUALLY UNDERSTOOD AND AGREED That Sellers shall execute and deliver a Bill of Sale and Bulk Sales Affidavit reflecting that the personal property is conveyed free and clear of all liens and encumbrances, with the exception of the amount owing Empire Federal Savings and Loan Association, of Livingston, Montana, on the Montana Trust Indenture hereinbefore referred to; and that the Sellers shall likewise <u>execute a Warranty Deed to the Purchasers, of even date herewith, conveying and assuring the said Purchasers title to the above-described</u>

8

property, free and clear of all encumbrances . . .
(Emphasis supplied.)

The contract further provided that the Heers would assign
their lease to the Maloneys. Both parties agree that they
understood that the purpose for the railroad lease was for parking.
An earlier lease unseen by either party had stated its purpose as
an "encroachment of motel."

Nonetheless, the contract provided that the property would be
conveyed free of encroachments not specified in the contract. None
of the instruments disclosed encroachments of the motel building on
the railroad right of way. It appears that the Heers were not
aware of this during the time of their ownership. The District
Court determined that this was a "technical" breach of the contract
and of title because the Heers warranted that the title would be
free of encumbrances. We agree with the conclusion of the District
Court that this is a breach of the contract.

Counsel for the Heers assisted the Maloneys in procuring a
thirty-year long-term lease with options for two additional ten-
year extensions. The District Court concluded that because of the
motel's age, there would be no possibility that the problem would
extend beyond the depreciable useful life of the motel. The
District Court further justified its finding of marketable title as
follows:

> Maloneys operation of and income from the motel has not
> been hindered or impaired by the encroachments . . .
> [A]ny damage from this is so insubstantial and the
> likelihood of litigation so remote that it does not
> render title to the property unmarketable. . . . It is
> also significant that these encroachments and conditions
> have existed for forty years with no objections from the

9

railroad or other adjoining owners . . .

An encroachment on adjacent property does not necessarily make a title unmarketable.

> If A owns Blackacre, his title thereto is not bad by reason of a structure thereon that encroaches on adjoining premises. A's title is unmarketable, however, if the encroachment jeopardizes a buyer's peaceful possession by exposing the buyer to the possible necessity of removing the encroachment. . . . If the encroachment is by Blackacre, marketability depends upon two factors: (1) is the encroachment substantial? (2) may the encroachment, if substantial, remain undisturbed?

1 M. Friedman, Contracts and Conveyances of Real Property (5th ed. 1991) § 4.15(b)1.

Marketable title is a question of law for the court. While it is doubtful that the encroachment in this case could be classed as substantial under the above test from Friedman's Contracts and Conveyances of Real Property, it is clear that the encroachment may remain undisturbed during the remaining years of the potential 50-year duration of the current lease term.

We hold that the District Court was correct in finding a breach of contract which did not render the title unmarketable.

IV.

Did the District Court correctly award damages?

The District Court awarded the Maloneys $1,895.50 for their costs in obtaining a survey of the property. The court determined that any other costs presented by the Maloneys for determination were speculative, nominal over the period of time of the lease and did not form a reasonable basis on which to award damages. Although the annual lease payment has increased over the years,

this could be expected as the lease agreement provided for such increases. The court further found that the Maloneys' operation of and income from the motel had not been hindered or impaired by the encroachments. In fact, their earnings from the operation were higher than they had expected and they had increased the revenues by 24% over the figures reported by the Heers, even though they had converted one of the motel bedrooms to their own personal family use.

Both parties presented expert testimony relating to damages. The Maloneys' appraiser, Steven A. Hall, testified that it would cost $19,761.52 to cure the encroachments. He acknowledged that there was no reasonable possibility of litigation with the railroad with the fifty-year lease. Mr. Hall's calculation was based on a strip of right of way 20' by 264', the entire length of the property. Mr. Hall testified that he was not aware the original lease included part of the building and that this information would affect his calculations of the cost to cure. James E. Burke, a realtor and appraiser, testified for the Heers. He testified that the encroachments did not have any significant effect on the value or marketability of the property and that the gross revenues from the business were much more important in determining such fact.

We review a district court's findings of fact to determine whether they are clearly erroneous. Interstate Prod. Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285. To determine if findings are clearly erroneous, we first review the record to determine whether they are supported by substantial evidence.

11

Second, if the findings are supported by substantial evidence, we determine if the trial court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the trial court has not misapprehended the effect of the evidence, this Court may still find clear error in a finding, despite evidence to support it, if a review of the record leaves it with a firm and definite conviction that a mistake has been committed. DeSaye, 820 P.2d at 1287.

Although conflicts may exist in the evidence presented, it is the trial judge's duty to resolve them and due regard is given to the court's ability to judge the credibility of the witnesses. DeSaye, 820 P.2d at 1287. The District Court's findings relating to damages are supported by substantial evidence in the record. The District Court explained why the testimony of the Heers' expert was more credible. The Heers' expert based his calculations upon credible mathematical calculations of differences in present values for annual rent over fifty years between the old lease and the new lease. That calculated difference was only $2,495.63 more for a new lease which covered an area four times larger than the old lease. Not only is this amount nominal when distributed over the fifty-year period, it is speculative.

The District Court determined that the Maloneys should be awarded costs for their survey. The Maloneys presented evidence of their costs of survey and the need for that survey. This too is supported by substantial evidence. After a thorough review of the record, we conclude that the District Court's findings regarding

12

damages are not clearly erroneous. They are supported by substantial evidence in the record, the District Court did not misapprehend the effect of the evidence and we are not left with a firm and definite conviction that a mistake has been made.

We hold that the District Court properly calculated the award of damages allowable to the Maloneys.

## V.

Did the District Court err by not awarding attorney's fees to the plaintiffs?

The Maloneys contend that they are the prevailing party in this action as the District Court found a breach of contract and awarded them damages for their survey costs. The general rule in Montana is that attorney's fees are not recoverable absent a statutory or contractual provision. Here, the contract for deed provides:

> IT IS FURTHER AGREED That, if it becomes necessary for either of the parties to bring suit to enforce any of the terms of this agreement, the prevailing party shall be entitled to reasonable attorney's fees, together with other costs attending the same, from the other party.

The District Court found that because of the circumstances of this case, each side should pay their own attorney's fee. The court reasoned that although the contract provides for attorney's fees to the prevailing party in the event of a lawsuit, plaintiffs did not prove any real damages aside from the costs of surveying. The court noted that the Heers' counsel had assisted Maloneys in obtaining a "very favorable new long term lease from the railroad."

13

While the record shows that the Heers' counsel assisted the Maloneys in negotiating a new lease, this assistance was not forthcoming until _after_ the Maloneys initiated this lawsuit. When the Maloneys were first told by a realtor that there was a possible marketability of title problem, they advised the Heers to that effect. They unsuccessfully tried to negotiate a more preferable long-term lease with the railroad. Again, it was only after their own efforts failed that they pursued this action against the Heers. As a result of this lawsuit, the Maloneys acquired a new lease and incurred survey costs--all of which required their time and effort.

The contract is clear--the prevailing party is entitled to attorney's fees. We have previously concluded the Heers breached the contract. Under the terms of the contract, the Maloneys as the prevailing party are entitled to attorney's fees. However, the Heers contend that the Maloneys, having been awarded only $1,895.50, are hardly the prevailing party.

The Heers cite Montana cases to support this argument, including Knudsen v. Taylor (1984), 211 Mont. 459, 685 P.2d 354, and Parcel v. Myers (1984), 214 Mont. 220, 697 P.2d 89. None are similar to this one. All other claims brought by the Maloneys were dismissed and the only issue remaining at the time of the bench trial was the contract issue, which the court found was technically breached by the Heers. The Heers make much of the District Court's use of "technical" to describe the breach. A technical breach is still a breach of contract, although the damages may be nominal.

14

We conclude that the contract breach in this case entitled the Maloneys to reasonable attorney's fees as the prevailing party.

The record shows that the Maloneys unsuccessfully attempted to negotiate a long-term lease to substitute for the indefinite term lease they had assumed. While the Maloneys benefitted from the assistance of the Heers' counsel, we are unable to determine whether this satisfies the contract term providing for reasonable attorney's fees to the prevailing party. This assistance demonstrates that the Heers tried to mitigate their damages, but it does not establish that such action can take the place of a "reasonable" attorney's fee.

The contract for deed requires an award of a reasonable attorney's fee to the prevailing party. Although the fixing of reasonable fees is within the discretion of the District Court, Smith v. Johnson (1990), 245 Mont. 137, 798 P.2d 106, the record does not support the District Court's decision concerning attorney's fees.

Affirmed in part, reversed in part and remanded to the District Court for a determination of reasonable attorney's fees.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices