No. 98-635

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 66N

AMCO BUILDING SYSTEMS, INC.,

a Montana Corporation

Plaintiff and Respondent/Cross Appellant,

v.

JOHN P. STOKES, PAMELA J. STOKES,

KEITH A. EDWARDS, WILLMA J. EDWARDS,

ROBERT K. EDWARDS, JOHN M. EDWARDS,

and CONRAD RANCH, INC., a Montana Corporation,

Defendant and Appellants.

APPEAL FROM: District Court of the Twentieth Judicial District,

In and for the County of Lake,

The Honorable Robert S. Keller, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John P. Stokes, Bigfork, Montana, *pro se*

For Respondent:

W. Arthur Graham, Sullivan & Tabaracci, Missoula, Montana

_____

Submitted on Briefs: July 1, 1999

Decided: March 16, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1.Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2.Appellants, John and Pamela Stokes, appeal the judgment of the Twentieth Judicial District Court, Lake County, in which the court found in favor of the respondent, Amco Building Systems, Inc., in a lien foreclosure action. Pursuant to a written contract between the parties, Amco agreed to provide the material and labor to construct a metal building on the Stokes' property in Lake County, Montana, and the Stokes agreed to pay Amco $55,000. Upon completion of the building, however, the Stokes refused to pay the outstanding amount due, $27,990, alleging that Amco breached the contract. Instead, the Stokes offered in writing to pay Amco $19,484 to extinguish the obligation. Amco filed a construction lien on the Stokes' property for the full amount due. On October 31, 1994, Amco commenced a foreclosure action on the lien in Lake County. After almost four years of litigation, a jury returned a general verdict in Amco's favor in the amount of $16,500. In its judgment, entered June 23, 1998, the District Court awarded Amco $16,500 on its lien, $436.31 in costs, plus $2,547.69 in attorney fees, for a total judgment of $19,484--the same amount the Stokes originally offered to pay Amco. From this, the Stokes appeal.

¶3.We restate the following issues:

¶4. Did the Stokes' written offer to pay part of the amount owing defeat the validity of a construction lien or extinguish the underlying debt?

¶5. Is a general contractor who supplies materials and labor through third parties and subcontractors required to give notice of right to file a lien?

¶6. Did Amco erroneously obtain relief by false and conflicting testimony, destroying discovery documents, and fabricating evidence?

¶7. Did the District Court abuse its discretion by denying the Stokes' right to amend their pleadings or allowing Amco's amended complaint?

¶8. Was it error for the District Court not to require Amco to prove complete performance or enhancement?

¶9. Did the District Court correctly allow venue of this action to be in Lake County?

¶10. Did the District Court err by ordering the Stokes' entire property to be sold at sheriff sale?

¶11.Amco raises three issues on cross-appeal, asserting that it should have been awarded more money and requesting a new trial. The following are the issues Amco raises:

¶12. Did the District Court err by failing to instruct the jury not to consider the Stokes' claims for offsets or damages which were previously rejected as a result of a directed verdict?

¶13. Did the District Court abuse its discretion and commit prejudicial error by refusing to allow Amco to submit its rebuttal expert witness?

¶14. Did the District Court abuse its discretion in limiting the award of attorney fees and denying pre-judgment interest?

## ISSUES ON APPEAL

### ISSUE 1

¶15.Did the Stokes' written offer to pay part of the amount owing defeat the validity of a

construction lien or extinguish the underlying debt?

¶16.Section 28-1-1201, MCA, provides that an obligation is extinguished by an offer of performance when it is made in conformity to the rules prescribed in Title 28, Chapter 1, Part 12, and with the intent to extinguish the obligation. The Stokes contend that their original offer to pay Amco $19,484 should have extinguished their obligation to pay any outstanding amount due. Accordingly, they believe they should be the prevailing party and should not owe Amco anything.

¶17.In support of their argument, the Stokes refer to the District Court's conclusion that the Stokes' written offer to pay Amco a particular sum of money was equivalent to the actual production and tender of the money and that pursuant to § 28-1-1202, MCA, Amco's refusal to accept the offer stopped the running of interest. They suggest that the same rationale should extinguish their obligation to pay Amco the outstanding amount due.

¶18.The Stokes fail to recognize, however, the applicability of § 28-1-1225, MCA, which provides that "[a]n obligation for the payment of money is extinguished by a due offer of payment if the amount is immediately deposited in the name of the creditor with some bank of deposit within the state of good repute and notice thereof is given to the creditor." Under this rule, the Stokes' obligation cannot be extinguished because there is no evidence that they deposited their offer of payment with a bank in Amco's name prior to Amco's filing of a lien.

¶19.Furthermore, the Stokes added conditions to their offer that were not in the parties' contract. Contrary to § 28-1-1211(1), MCA, which requires that an offer of performance be made free from any conditions, the Stokes demanded that Amco provide original lien waivers as to all suppliers and laborers, plus they proposed deductions from the amount due. Instead of offering Amco the outstanding balance of $27,990, they offered to pay Amco $19,484. An offer of payment that modifies the original contract cannot extinguish a party's obligation.

¶20.The Stokes contend that because Amco breached the contract, they are excused from complying with these statutes. In particular, they believe that because Amco used subcontractors, which allegedly was not part of the contract and in effect caused Amco to pledge the Stokes' property for its own credit to obtain materials, Amco unilaterally created a condition precedent to furnish proof that its creditors were paid before the Stokes were obligated to make final payment to Amco. The Stokes cite no authority to support

their argument.

¶21. The Stokes also contend that because Amco's position at trial was limited to whether the Stokes offered enough money, Amco cannot now argue that the Stokes did not properly tender payment nor can it characterize the offer as an offer to settle. In our assessment, however, Amco's argument simply is in response to the argument the Stokes make on appeal. Despite its reference to the Stokes' offer as an "offer of settlement," Amco does not characterize the offer any differently than the Stokes presented it.

¶22. Based on the Stokes' failure to comply with the applicable statutes, we conclude that the Stokes' written offer to pay part of the amount owing did not defeat the validity of Amco's construction lien or extinguish the underlying debt.

## ISSUE 2

¶23. Is a general contractor who supplies materials and labor through third parties and subcontractors required to give notice of right to file a lien?

¶24. Amco did not provide the Stokes a notice of right to file a lien. It claims that it was exempt from the notice requirement pursuant to § 71-3-531(1)(a), MCA, because it "furnishe[d] services or materials directly to the owner at the owner's request" to construct the building.

¶25. The Stokes disagree based on the fact that Amco utilized third-party suppliers and subcontractors. The Stokes argue that Amco misrepresented itself as being able to perform all the work needed to construct the building and as having all the necessary supplies available in inventory.

¶26. The contract between the parties specified that "Amco proposes . . . to furnish all materials and labor necessary to install, construct and place the described herein." Contrary to the Stokes' argument, this language does not prohibit Amco from utilizing suppliers and subcontractors, and acting as a general contractor. The existence of a contractual relationship between the parties is the basis upon which Amco furnished materials and labor "directly" to the Stokes. Thus, Amco was exempt from the lien notice requirement.

## ISSUE 3

¶27. Did Amco erroneously obtain relief by false and conflicting testimony, destroying discovery documents, and fabricating evidence?

¶28. Here, the Stokes argue that an attorney or counselor who is guilty of any deceit or collusion or consents to any deceit or collusion with the intent to deceive the court or a party forfeits to the party injured treble damages. *See* § 37-61-406, MCA. In accordance with this statute, the Stokes must prove that the alleged deceit caused such damage to impact the lower court's decision and warrant a reversal. *See Barrett v. Holland & Hart* (1992), 256 Mont. 101, 109-10, 845 P.2d 714, 719. The Stokes are concerned that evidence presented to the jury by Amco's allegedly deceitful acts influenced the jury's decision against them.

¶29. The Stokes call attention to Plaintiff's Exhibit no. 16, an engineer's document which they allege was fabricated to support false testimony regarding whether Amco had the proper authority to alter installation of the trusses on their building. The contract between Amco and the Stokes specifies that while the approximate bay spacing for the trusses would be ten feet, the final spacing would be left to the engineer. The Stokes contend that Amco tried to hide the fact that it altered the truss installation without the authority of an engineer. Notwithstanding, Amco's witness admitted during the Stokes' cross-examination that Plaintiff's Exhibit no. 16 was not the same document offered in discovery and that a four-ply truss was placed on a ten foot center instead of the five-foot center recommended for a two-ply truss in the installation instructions.

¶30. Evidence also shows that Amco used a lesser-quality, less expensive five-sack cement instead of the five-and-one-half-sack cement which the contract required. Allegedly, Amco acknowledged in an affidavit that five-sack cement had been delivered to the site, but then at trial contradicted itself by stating that it "just now learned" that five-sack cement was used.

¶31. Upon our review, Amco's purported deceit does not warrant a reversal of the case. The record shows that the Stokes exercised ample opportunity at trial to question Amco about the installation of the trusses and the cement that was used and that they were able to provide the jury sufficient information so the jury could make an informed decision.

¶32. Next, the Stokes argue that Amco withheld from them copies of lien waivers from third-party suppliers and subcontractors, and that a particular lien waiver that was introduced had been altered. Plaintiff's Exhibit no. 15 is a copy of a lien waiver dated

April 30, 1994, for which Amco's bill appears to not have been paid until May 3 or May 6, 1994, sometime after Amco alleged full and complete performance of its contract with the Stokes. However, given our foregoing conclusion that the use of third parties and subcontractors was not a breach of contract, evidence of the lien waivers was not a necessary factor in the jury's determination.

¶33.The Stokes further contend that Amco destroyed records and documents and prevented evidence from being admitted at trial. The Stokes, however, do not draw our attention to any particular exhibits, records or documents that would have changed the outcome of this case.

¶34.Finally, the Stokes allege that Amco deceitfully obtained satisfaction of judgment and entered a notice of entry of judgment in error. We are simply unable to determine from the Stokes' brief what sort of error they claim. It appears, however, that the Stokes brought their claim before the District Court post-trial and the court granted them relief. Accordingly, there is no basis for reversal.

¶35.We conclude that none of the Stokes' arguments prove that Amco obtained erroneous relief.

## ISSUE 4

¶36.Did the District Court abuse its discretion by denying the Stokes' right to amend their pleadings or allowing Amco's amended complaint?

¶37.Three years after Amco commenced this action, the Stokes filed a motion to amend and supplement their pleadings in order to "clarify any misunderstanding of [their] counterclaims that were through inadvertence, and oversight mislabeled as an affirmative defense." The Stokes contend that they wanted to include a counterclaim for fraud to support a request for punitive damages. By the court's denial of their motion, the Stokes now argue that they were prejudiced from changing their legal theory.

¶38.Rule 15(a), M.R.Civ.P., provides that a court should freely allow amendment when justice so requires. In this matter, justice did not require an amendment of the pleadings because John Stokes had listed a number of affirmative defenses and claims relative to fraud in his original pleadings. As noted in the trial transcript, the Stokes were allowed to raise all the issues at trial which would have been raised in an amended counterclaim.

¶39.The Stokes further contend that Amco prejudicially and without leave of the court filed an amended summons and complaint, and served it only on Pamela Stokes. However, we conclude that there was no prejudice because the only difference in Amco's amended complaint compared to its original complaint was the title of the case referring to "Pamela J. Stokes" instead of "Paula J. Stokes." Furthermore, the record reveals that the fact that John Stokes was not served the amended complaint did not interfere with his ability to participate effectively in the pretrial proceedings.

## ISSUE 5

¶40.Was it error for the District Court not to require Amco to prove complete performance or enhancement?

¶41.The Stokes believe that because Amco in its complaint pled for the full amount due of $27,990, its threshold of proof should have been full and complete performance, nothing less. They allege that it was error for the District Court to allow the jury to award Amco $16,500 in a general verdict without an explanation, because the jury's verdict represents only partial performance under the contract. They argue that the reduction in Amco's award reflects quantum meruit relief, which Amco did not plead.

¶42.Once again, the Stokes fail to support their argument. Based on our assessment, the amount that the jury awarded Amco reflects the offsets and credits the Stokes successfully established pursuant to their own breach of contract claim. Section 27-1-311, MCA, allows for the appropriate measure of damages in the amount which compensates a party aggrieved for the detriment which was proximately caused thereby.

¶43.The Stokes contend that Amco should not have received an award because it breached the contract. They argue the condition of the structure Amco built is defective, it is not an enhancement to the property, and it was completed thirteen days after the agreed upon completion date despite the language in the contract that time was of the essence. In the alternative, the Stokes argue that Amco itself produced evidence to support an award no greater than $12,000.

¶44.In our review of a jury verdict in a civil case, the prevailing party is entitled to any reasonable inference that can be drawn from the facts which are proven; we will not disturb the jury's findings unless they are inherently impossible to believe. *See Sandman v. Farmers Ins. Exchange*, 1998 MT 286, ¶ 41, 291 Mont. 456, ¶ 41, 969 P.2d 277, ¶ 41. The

Stokes do not convince us that the jury's verdict, which suggests there was substantial performance on Amco's behalf and no material breach, is inherently impossible to believe. Thus, there was no error.

## ISSUE 6

¶45.Did the District Court correctly allow venue of this action to be in Lake County?

¶46.The Stokes next argue that this case should not have been heard in Lake County based on a provision in the contract which states that in "any suit or action . . . , Purchaser agrees that the venue of said action shall be in Missoula County." This venue provision is not controlling, however, since the relevant action was not on the contract, but rather an action to foreclose the lien.

¶47.Pursuant to § 71-3-563(1), MCA, the provisions of Title 25 are applicable to and constitute the rules of practice in proceedings involving construction liens. Section 25-2-123(1)(d), MCA, provides that the proper place of trail for the foreclosure of liens and mortgages on real property is the county where the subject of the action is located. Similarly, § 25-2-123(3), MCA, provides that the proper place of trial for all actions for the enforcement of liens upon real property is the county in which the real property affected by such action is situated. Thus, statutory law provides that the proper venue for Amco's foreclosure action was in Lake County.

¶48.The Stokes are disturbed that in a previous action involving Amco and a different contracting party, Amco argued that the proper venue for a foreclosure action under the same contract provision was Missoula County. The Stokes cite to an unpublished opinion issued by this Court. Such decisions are not citeable as precedent. Furthermore, the fact that an attorney takes conflicting positions in different cases does not sway our decisions.

¶49.The Stokes' argument also must fail because they did not properly raised the venue issue in the District Court. When they first raised the issue in June 1997, they asked the District Court to dismiss the action. Instead, they should have sought a change of place of trial. They did not seek a change of place of trial until February 1998, almost three-and-one-half years after the action commenced. Their motions were not timely and would have been overly burdensome to the judicial system if a change of venue was permitted.

¶50.Thus, we conclude that the District Court correctly allowed venue of this action to be

in Lake County.

## ISSUE 7

¶51.Did the District Court err by ordering the Stokes' entire property to be sold at sheriff sale?

¶52.The Stokes' land in Lake County was mortgaged to the Edwards and to Conrad Ranch, Inc. prior to construction. The District Court, in recognizing this, ordered that "[t]he rights of Amco Building Systems, Inc., under the construction lien are subordinate to the interest of Keith A. Edwards, Wilma J. Edwards, Robert K. Edwards, John M. Edwards and Conrad Ranch, Inc." and that "out of proceeds of sale, the Sheriff shall first recover fees, costs and disbursements, then pay to the person listed . . . all amounts owing, then pay to Amco Building Systems, Inc., the amounts due under this judgment." However, no order of sale was issued. Nearly one month after the court entered judgment, it ordered a stay on the foreclosure until August 19, 1998, to allow the Stokes to either pay and fully satisfy the judgment and interest thereon or to place the funds in an account payable to Amco. The Stokes placed the money in an account and on August 19, 1998, Amco withdrew it pursuant to the authority of the court.

¶53.The Stokes' concern appears to be based on the alleged fact that the court's order of a sheriff's sale caused the Edwards and Conrad Ranch, Inc., to accelerate their mortgage and declare the Stokes in default. This, in effect, allegedly caused the Stokes to take out a different mortgage on less desirable terms to pay off the underlying mortgage, which cost them $100,000 more. The Stokes argue that the District Court should not have ordered the Edwards' and Conrad Ranch, Inc.'s, interests to be sold as part of the foreclosure and sheriff's sale. They suggest that, instead, the building Amco constructed could have been disassembled and removed not to disturb the Edwards' and Conrad Ranch, Inc.'s superior interests.

¶54.However, the Stokes did not make this argument to the District Court. We find no evidence in the record to substantiate their claim of an accelerated mortgage or a new mortgage. Also, we find no objection to the court's order of a sheriff's sale. An objection must be made and it must be clear to the court so that the court has an opportunity to correct itself. *See State v. Huerta* (1997), 285 Mont. 245, 261, 947 P.2d 483, 493. In the absence of an objection on the record, we do not consider the issue.

¶55. The District Court's judgment and decree of foreclosure is affirmed.

## ISSUES ON CROSS-APPEAL

¶56. On cross-appeal, Amco challenges the District Court's judgment, asserting that the District Court should have awarded it more money and requesting a new trial. However, after collecting $19,484 from the Stokes, Amco filed a partial satisfaction of judgment noting only that the amounts remaining unsatisfied are post-judgment interest and attorney fees that were awarded separately by this Court. By collecting the money and filing a partial satisfaction of judgment, Amco has waived its cross-appeal.

¶57. This Court has held that the acceptance of the fruits of a judgment is inconsistent with the prosecution of an appeal which attacks the judgment. The general rule is that:

the right to accept the fruits of a judgment and at the same time to prosecute an appeal from it are not concurrent; on the contrary, they are wholly inconsistent rights. The election of one necessarily excludes the enjoyment of the other.

*Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 127, 580 P.2d 915, 918 (citing Peck v. Bersanti (1935), 101 Mont. 6, 9, 52 P.2d 168, 169).*

¶58. There is an exception to this rule, however:

Where the reversal of a judgment cannot possibly affect an appellant's right to the benefit accepted under a judgment, then appeal may be taken and will be sustained despite the fact that the appellant has sought and secured such benefit.

*Ferguson, 177 Mont. at 127 , 580 P.2d at 918. In cases such as Ferguson, Oster v. Oster (1980), 186 Mont. 160, 606 P.2d 1075, and Maloney v. Heer (1993), 257 Mont. 500, 850 P.2d 957, this Court upheld the exception when on appeal the appellants asked only that their damage awards be increased and where an increase in damages was the only possibility. This is not the case here.*

¶59. Amco contends that the trial court committed prejudicial error in instructing the jury as to matters affecting damages and by refusing to allow it to submit testimony from an expert rebuttal witness. Amco claims that, while Stokes received a fair trial, it did not. As relief for these claims of error, Amco requests that we reverse the judgment and order a new trial. Were we to grant the relief requested by Amco, there remains the possibility that the fact-finder in the new trial might award Amco less than it was awarded in the first trial.

That being the case the general rule articulated in *Ferguson* applies. Amco's election to accept and to satisfy the damages judgment is inconsistent with its appeal of that same judgment. Consequently, we decline to address Amco's cross-appeal issues.

¶60.Amco may still seek to collect post-judgment interest on the judgment awarded and the attorney fees awarded by this Court, neither of which obligations were satisfied. Post-judgment interest, however, accrued by reason of the underlying judgment. Once the judgment was satisfied, interest ceased to accrue and the amount of post-judgment interest owing is frozen as of the date of satisfaction of the judgment. Furthermore, as to the prior awards of attorney fees by this Court, neither of those would have been the subject of a new trial.

¶61.Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART